## McGowan *v.* State.

(Division B.   Jan. 30, 1939.)

[185 So. 826.   No. 33462.]

**Martin & Farr,** of Prentiss, for appellant.

W. D. Conn, Jr., Assistant Attorney General, for the State.

**Ethridge, P. J.,** delivered the opinion of the court.

Jack McGowan was tried in the justice of the peace court of Jefferson Davis county for the unlawful possession of intoxicating liquors, and was convicted and sentenced to pay a fine of $125 and costs; from which conviction he appealed to the Circuit Court, where he was tried anew, again convicted, fined $250, and sentenced to ninety days in jail. From which conviction he appeals here.

The evidence against the appellant was obtained by a search of the car, without a search warrant. The sheriff of the county, the constable of the district, and the marshal of the town made the search without a search warrant, upon a statement made by a negro, A. D. Daniels, to M. E. McRaney, the constable, and to the sheriff, A. H. Polk. The testimony was objected to on the ground that there was no probable cause shown prior to the search sufficient to authorize it, under the law. I shall quote from the evidence at some length: "Q. At the time you made the search tell the court whether or not you had a search warrant? I did not. Tell the court if you had no search warrant if you had information from a person as to liquor coming? Yes, sir. After receiving the information from this person that Jack McGowan was bringing whiskey, tell the court whether or not you had sufficient time to obtain a search warrant? I did not. Tell the court whether or not the fellow who gave you that information told you that you didn't have time? Yes, sir. What information did he tell you as to how quickly you must act if you were to intercept the liquor? He said I had to be quick. Tell the court if this party told you where the defendant was going to obtain the liquor? Yes, sir. Tell whether or not he told you the amount of liquor he was going to get and bring back? Practically the amount. Who was the person that gave you that information? He started talking to Mr. Mc-

Raney about it and I came up and he told both of us about it then. And who was that? A. D. Daniels. Was that a colored man or white man? A colored man. Did he tell you the party whom he was going to get the liquor from up there? I am not sure but I believe he did.''

This was on the preliminary examination of the sheriff, and after such examination, motion was made to exclude the evidence, which motion was overruled.

On cross-examination the following questions and answers were obtained: ''Q. Who was the fellow that gave you that information? A. D. Daniels. Was that a white man or a negro? A negro. Did you promise him anything? I wouldn't be surprised. You promised him something then? I got what he told me and if I'm a mind to pay him I can but I haven't paid him anything yet. What was it he told you now? He told me Jack McGowan had gone after liquor. Did he tell you that as a fact? I guess so because it turned out like he told me. You don't know but what somebody told him, do you? I don't know. He didn't communicate that as a fact within his knowledge to you, did he? He told both of us but I don't know anything about his knowledge. I didn't ask him anything about that. But it was not communicated to you as a fact within his knowledge, was it, Sheriff? I didn't ask him where he got his knowledge. How did you know the fellow coming down there was the man you wanted?''

By the District Attorney, ''If the Court please I submit he has gone into that sufficiently.'' The Court, ''I think so, too.''

''Q. This fellow A. D. Daniels you say you talked with down there in front of the bank, did he tell you that he knew Jack McGowan had whiskey that night? I never asked him—he just told me he was gone after it and I said, 'All right'—He didn't tell you he knew it, did he? I didn't ask him how he knew it and didn't care. He didn't state any facts to you within his knowledge, did he? He didn't say where he got his information. You

have used him before in these liquor matters, haven't you? That's up to me, Mr. Martin. You've paid him money before, haven't you? That's got nothing to do with this case. I ain't never paid him anything but that's got nothing to do with this case?''

Mr. McRaney, the constable, testified substantially to the same effect, except that he said Daniels told him that McGowan was going to get the liquor from Vardaman Smith, up above Mt. Olive.

The court, after this preliminary hearing, overruled the objection, and the testimony was introduced before the jury, where it appeared in the examination of Mr. McRaney, the constable, that A. D. Daniels had been before the court a number of times on charge of violation of the liquor laws. Daniels was not called as a witness, either on the preliminary hearing or on the trial on the merits.

In Moore v. State, 138 Miss. 116, 103 So. 483, it was held that an automobile might be searched without a warrant, upon probable cause that it contained intoxicating liquors, or that such liquors were being transported in such vehicle. This was a decision growing out of the apparent necessity of the case, necessity being the basis for authorizing search without compliance with section 23 of the State Constitution prohibiting the issuance of such warrants without probable cause, supported by affidavits, particularly describing the place to be searched or the person or thing to be seized. In that case the majority opinion held that when a search is made without a warrant, the person making it must justify his act by proving that he had probable cause.

In McNutt v. State, 143 Miss. 347, 108 So. 721, it was held that what constitutes probable cause, or sufficient evidence to constitute probable cause, are judicial questions to be determined by the court; that the judgment of the officer making the search in regard to the matter is not sufficient, unless the facts, on judicial inquiry,

authorize a finding that it is. And, in effect, the same was held in Mapp v. State, 148 Miss. 739, 114 So. 825.

In Elardo v. State, 164 Miles 628, 145 So. 615, it was held that the law did not authorize an officer to make a search on mere information given by someone; but that the information must be communicated as a fact within the knowledge of the person giving it; that a search warrant cannot be issued except on information amounting to probable cause; and that mere rumor is not sufficient to constitute probable cause. It was also held that laws in regard to search are to be strictly construed against the state, and favorably to the citizen, to protect his rights. It is also held that a search warrant can be issued only on evidence which would be competent on trial, and which would lead a man of prudence and caution to believe that an offense had been committed; and that where the facts did not warrant the issuance of a search warrant, the sheriff cannot make a search without one. In the Elardo Case the deputy sheriff was informed by a person that he possessed information that a truck was stalled on the boulevard in the city of Greenwood, with a load of liquor; but the informant did not say that he knew the facts personally, and no inquiry was made as to the source of his knowledge. On proceeding to the place indicated, the officers found the truck loaded with liquors, which were seized. In that case it was held that the information, given over the telephone, without any indication as to its source, was insufficient to authorize a search without a warrant. It was also held that the information warranting the search must exist before the search is made, and cannot be supplied by facts discovered thereafter. In Smith v. State, 160 Miss. 56, 133 So. 240, the facts stated were as follows: ''On the question of probable cause, Deputy Sheriff Suddeth testified that on that day Sheriff Ellzey had informed him that these two appellants would pass through Pike county with whisky. There is reference to a letter

from the sheriff of Lincoln county, but the contents of that letter do not appear in this record. Sheriff Ellzey was not introduced as a witness in the case, nor is it shown what information he had, nor from what source it came, as to the appellants hauling whisky through Pike county. The only evidence upon which probable cause is based in this case is the statement by the sheriff of Pike county to his deputy, detailed above. The deputy sheriff was acting in obedience to the orders of his principal, the sheriff, at the time of the search, at the time the effort was made to halt the appellants, and at the time they were pursued and until the appellants threw the whisky from the car. We cannot agree with the court below that probable cause exists here. This was the sheriff's raid, personally conducted in the instant case, but it would have been his raid and his search if it had been conducted by his deputy sheriffs in his absence, if conducted by the deputies with his knowledge and consent."

It further appears in this decision that on the 24th of September, 1930, E. T. Suddeth and C. A. Simmons, deputy sheriffs of Pike county, were carrying a prisoner to Hammond, Louisiana, and at Tangipahoa, Louisiana, these deputies saw the two appellants, driving a Chevrolet car. The deputies were going south, the appellants north. Having completed their journey, the deputies returned to Magnolia, telephoned to the sheriff, Ellzey, that the negroes were en route, and for him to accompany them to Osyka, to apprehend them. The sheriff, with his deputy, Brent, and the two deputies, proceeded to Osyka in the night, and when the officers reached the railroad crossing the appellants saw them and turned back, the officers tried to stop them, and when the officers were recognized, the appellants fled in the car. The officers pursued them, and then the occupants of the car began throwing gallon jugs of whiskey therefrom. They had twelve gallons of whiskey in gallon containers, eight of which were broken, and four of which were not broken. This evi-

dence, together with the whiskey and containers, was offered and permitted by the court to go to the jury over the objection of the appellants.

The Supreme Court held in this case that the above evidence was not sufficient to authorize a search without a warrant.

In Lenoir v. State, 159 Miss. 697, 132 So. 325, it was held that before a sheriff can search an automobile for intoxicating liquor without a search warrant, he must have information amounting to probable cause that it contains liquor. The mere information that some negro from Clay county would come to a certain community on a certain night in a Ford car containing liquor is insufficient to comply with the requirements of the statutes and the Constitution on the subject. The Court there held that the information must be specific, and the car must be identified from other cars, or the person must be identified from other persons; that where the evidence to sustain a conviction is obtained by unlawful search, the conviction must be reversed, regardless of whether or not the liquor was actually found in the car, in making the search.

In State v. Messer, 142 Miss. 882, 108 So. 145, the court excluded testimony offered by the state on the ground that it had been obtained by means of unlawful search of the appellee's automobile. The facts in that case were much like those in the present case. There the marshal of Sumrall received information that the appellee was near Epley in Lamar county, four or five miles from Sumrall, and that he had whiskey in his car. The marshal, in company with a private citizen, went to Epley and searched the car, finding therein a quantity of whiskey. This was done without a warrant authorizing the search. The Court held that the evidence was insufficient, and that the officer, although outside of the municipal limits, was acting under color of his office; and that the evidence was not admissible under the facts stated.

The law requires that the information upon which the

sheriff or other officer acts, when not his personal information, must be given by a credible person, and the facts must be shown to be within the knowledge of the informant. The search and seizure of persons or property can only be authorized by strict compliance with the law; and the law requires that the information be obtained from a credible person—credible in the legal sense, as being a person whose known standing or reputation in the community for veracity and reliability entitled him to belief by a reasonably prudent person. It is not sufficient merely to show that the sheriff or other officer actually believed the information to be true; in addition, such officer must have received it from a person whose reputation for truthfulness warrants that belief. An officer, in certain respects, may be easy to convince. The test is, whether or not it was sufficient to convince an ordinarily reasonable man. When the credibility of a witness is spoken of, it refers not only to his capacity to testify, but also to whether he is worthy of belief,—a man whose standing is such that ordinarily his word would be accepted.

An officer undertaking to act without a warrant, upon such information, should inquire as to the source of knowledge, unless it has been stated affirmatively that the truth of the matter is personally known to the informant. As stated in Elardo v. State, supra, the officer cannot act upon less authentic proof or information than would be required in issuing a search warrant—the source of the information must be ascertained. If it turns out to be hearsay, the warrant should not be issued; and likewise, in the case of a search without warrant, it should not be acted upon. The protection of the citizen in this regard is secured by the Constitution, and the Constitution is the highest known law. No act prohibited by it can be given effectuality and validity. The Constitution protects the rich and the poor alike. No matter what the status or condition of a person may be, he is entitled to

the constitutional protection which secures the liberty of the citizen. It protects the person fettered by poverty, blinded by ignorance, tempted by hunger, and goaded by despair, to the same extent that it protects those living in a palace, sleeping upon soft beds, dressing in "purple and fine linen, and faring sumptuously" every day. The constitutional law knows no difference in the rights of citizens. Equal protection, under the law, is one of the corner stones of the American system of government, and experience admonishes us that these constitutional rights should be graven "with a pen of iron upon the rock forever."

It follows from what we have said that the search was illegal, that the evidence was incompetent, and that the judgment must be reversed and the cause remanded.

Reversed and remanded.