231 So.2d 779 (1970)
Willie Lee STRODE
v.
STATE of Mississippi.
No. 45615.
Supreme Court of Mississippi.
January 12, 1970.
Rehearing Denied February 16, 1970.
*780 Karl W. Kepper, Robert T. Jackson, Gray & Montague, Kepper & Kepper, Hattiesburg, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Wade H. Creekmore, Jr., and James H. Creekmore, Special Asst. Attys. Gen., Jackson, for appellee.
ETHRIDGE, Chief Justice:
Willie Lee Strode, appellant, was convicted of burglary in the Circuit Court of Forrest County and sentenced to seven years in the state penitentiary. The conviction rests chiefly upon incriminating physical evidence, part of which was found on Strode's person in the course of a search incident to his arrest without warrant, and the remainder was found in his motel room in the course of a search pursuant to a search warrant. The ultimate issue is whether there was probable cause constitutionally sufficient to support the validity of these productive searches. Specifically, this involves two issues: (1) Was the informer's tip reasonably trustworthy *781 so as to provide probable cause for the arrest without warrant and search incident thereto, and the search of the motel room with warrant? (2) Was the circuit court justified in refusing to require the police officer to disclose the identity of the informer? We answer these questions in the affirmative, and affirm the conviction.
Ben Shemper & Sons, Ltd., a partnership in Hattiesburg dealing in scrap metal, was burglarized on January 27 or 28, 1968. A ladies' Timex wristwatch and $360 in cash were stolen. $50 of the currency taken was wrapped in a money band bearing the stamp of the First National Bank of Hattiesburg. The intruders gained access to the premises by cutting through a chain link fence surrounding the Shemper property, and to the valuables by "peeling" the firm's safe. Officers investigating the crime on the morning of January 29 found in the soft ground below the severed fence shoe impressions, which they preserved in plaster-of-paris casts. They also collected and preserved specimens of paint and "fire clay" from the "peeled" safe.
Appellant and a companion were arrested in New Orleans on January 29, 1968, on suspicion of armed robbery of a New Orleans bank, by detectives of the New Orleans Police Department, acting on an informer's tip. Shortly after the arrest, still acting on the basis of the informer's tip, and, in addition, certain collateral information, the New Orleans officers applied for and were granted a warrant authorizing a search of appellant's residence, a New Orleans motel room. The officers conducted the search and in its course seized certain articles specified in the warrant. Appellant's arrest, the search incidental to it, and the subsequent search under warrant, all conducted by Louisiana officers, were not related in their inception to any crime committed in Mississippi.
Evidence turned up during the two New Orleans searches did, however, connect appellant with the Shemper burglary. The search incident to Strode's arrest found him in possession of a money band impressed with the stamp of the First National Bank of Hattiesburg, and the search under warrant produced several articles of clothing bearing paint and fire clay particles, which the FBI Crime Laboratory found to be identical with those collected by the Hattiesburg Police Department from the "peeled" Shemper safe. Furthermore, one of appellant's shoes, which he voluntarily handed over to the New Orleans officers, was ascertained by an expert of the New Orleans Police Crime Laboratory to be identical with the one which left its imprint beneath Shemper's severed fence. All of this evidence was received against appellant at trial over his objection that the searches which produced the evidence were void under the Fourth and Fourteenth Amendments for want of probable cause.
On December 14, 1967, Whitney National Bank, 3740 Elysian Fields Avenue in New Orleans, was robbed of $40,000 by two armed Negro gunmen. On January 29, 1968, officers of the New Orleans Police Department investigating the crime received a report from an informer known to them, but whose identity they refused to divulge, that the robbery had been committed by the appellant and a companion named Willard Manuel. According to Detective Lanza, the informer had in the past provided information which had proved reliable and had led to the arrest and conviction of others engaged in the same type of activity. The informer's report in this case was very detailed, bespeaking first-hand knowledge of appellant, his companion, and their criminal modus operandi: The robbers were appellant, Strode, and Willard Manuel, both Negro males from Chicago, Illinois, who currently were residing in Room 134 of the Tamanaca Downtown Motel in New Orleans. In that room, said the informer, officers would find evidence of the robbery, including hand guns, blue steel, masks, dark clothing, stolen currency, heroin, marijuana, and radio equipment capable of monitoring New Orleans police radio frequencies. *782 The informer further said that most of the money stolen from the Whitney National Bank was stored in three safety deposit boxes in New Orleans  specifically Box No. 220 and Box No. 454 of the International City Bank, 921 St. Charles Avenue, and Box No. 539 of the Whitney National Bank, 228 St. Charles Avenue. Finally, the informer told the officers that the robbers could be apprehended outside the International City Bank on January 29. On that day, outside the International City Bank, Strode and Manuel were in fact arrested while attempting to enter a car bearing Illinois license plates. In their possession were keys to the specified safety deposit boxes and a key to Room 134 of the Tamanaca Downtown Motel. Strode, as mentioned above, had in his pocket a money band stamped by the First National Bank of Hattiesburg.
Excerpts from the Louisiana application (or affidavit) for search warrant are quoted in an appendix to this opinion.

I.
Probable cause is a practical, nontechnical concept, based upon the conventional considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it. McCollum v. State, 197 So.2d 252 (Miss. 1967); State v. Pebworth, 251 La. 1063, 208 So.2d 530 (1968); Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
There was probable cause to justify the officers in arresting appellant, and the evidence obtained thereby was admissible. The informer was known to the officers as a credible person. Before making the arrest they knew that a New Orleans bank had been robbed by Negro gunmen, and that Strode and Manuel, both from Chicago, committed the robbery, according to the informer, who had in the past given reliable information to Detective Lanza. The informer had told the police that money from the robbery had been stored in two safety deposit boxes at one bank in New Orleans, and in another box in another bank; and that Strode and Manuel were living in a particular room in a specific downtown motel and items of the armed robbery were located in that room. The informer either knew or had arranged for Strode and Manuel to be outside the International City Bank at the time of the arrest. The officers had reason to believe that the informer was credible, since he had provided truthful tips in the past, and that the information was reliable, since the same was corroborated by the independent investigation of the officers. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); McCollum v. State, 197 So.2d 252 (Miss. 1967); Bradshaw v. State, 192 So.2d 387 (Miss. 1966).
Further, the officers had probable cause sufficient to support the application for the search warrant. Probable cause exists when a police officer has personal knowledge and reasonably trustworthy reports of facts which are sufficient to warrant a reasonably cautious man's believing an offense has been or is being committed. The application for search warrant complies fully with the requirements of decisions of the United States Supreme Court and of this Court. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); O'Bean v. State, 184 So.2d 635 (Miss. 1966); See Note, The Informer's Tip as Probable Cause for Search or Arrest, 54 Cornell L.Rev. 958 (1969); Comment, Informer's Word as the Basis for Probable Cause in the Federal Courts, 53 Cal.L.Rev. 840 (1965).
*783 The two-part test of Aguilar requires a magistrate to be informed of (1) some of the underlying circumstances from which the informer concluded that the defendant was the one guilty of the offense, and (2) some of the underlying circumstances from which the officer concluded that the informer was credible or his information reliable. In short, under the basis-of-knowledge test, the informer must have obtained his knowledge by personal observation or in some other dependable manner rather than through casual rumor. The second reliability test is an attempt to guard against tips provided by untruthful or unreliable informers, and suggests that an informer is credible if he has provided truthful tips in the past. Moreover, the information may be deemed reliable if corroborated by independent investigation Both tests require only that some of the underlying circumstances be sworn to. Furthermore, in Spinelli, the Court indicated that the basis-of-knowledge test could be fulfilled without a statement of the circumstances from which the informer derived his information; i.e., if a tip is sufficiently detailed, it may be self-verifying, and one may conclude that the informer was not relying on mere rumor. In the instant case, the tip, because of its great detail and corroboration, was self-verifying, and in addition, there was independent corroboration by the New Orleans officers. Given substantial compliance by disclosure of some of the underlying circumstances relevant to each of the two tests, magistrates and reviewing courts have ample room in which to use common sense.

II.
The circuit court sustained the objection of the State to questions propounded to Detective Lanza designed to reveal the identity of the informer. Under the circumstances, we find no error in that action of the trial court.
The courts have recognized the value of the informer's role in law enforcement and have developed an "informer's privilege," allowing the government to conceal the sources of its information. Wigmore summarizes this privilege, which is really a privilege of the government not to reveal the informer's identity, in the following manner:
A genuine privilege, on * * * fundamental principle * * *, must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. 8 Wigmore, Evidence § 2374 (McNaughton Rev. 1961).
On the other hand, the government's interest in keeping the identity of the informer a secret must be balanced against the right of an individual to due process in a criminal proceeding. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
It is the general rule in this country, subject to certain exceptions and limitations, that the prosecution is privileged to withhold from an accused disclosure of the identity of an informer. The many cases on this point, together with its limitations, are cited and discussed in an annotation in 76 A.L.R.2d 262 (1961).
In a criminal trial guilt must be proved beyond a reasonable doubt, but probable cause, with which we are here concerned, requires only a showing of reasonable probability. For example, Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the court required disclosure of the informer, is a unique case, because not only was the informer an actual participant in the alleged crime, but, besides the government agent, he was the only eye-witness. Moreover, the issue was guilt or innocence at trial, not merely probable cause at a pretrial hearing. Since the defendant could not refute the agent's testimony without that of *784 the informer, the latter's personal testimony was essential to a fair trial on the merits.
Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) states the established rule in the federal courts. Three informers who were not material witnesses gave information concerning probable cause for issuance of a search warrant. The Court upheld the district court's action in refusing to compel disclosure of the informers' identities.
McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), dealt with the issue of disclosure at a pretrial hearing where the arrest was made without a warrant. Each of the officers described with specificity both what the informer actually said and why they thought the information was credible. Their testimony detailed the underlying circumstances from which the informer concluded that narcotics were where he claimed they were, and some of the underlying circumstances from which the officers concluded that the informer was credible and his information reliable. The petitioner directly challenged the informer's privilege as violative of the Fourth, Sixth and Fourteenth Amendments. The Court rejected these contentions. It said that, where the issue is a preliminary one of probable cause for arrest or search, rather than guilt or innocence, police officers are not invariably required to disclose an informer's identity, if the trial judge is convinced by evidence submitted in open court and subject to cross-examination that the officers relied in good faith upon credible information supplied by a reliable informer. We think this is a proper test for application in this jurisdiction. In every case, however, there must be a balancing between the public interest in protecting the flow of information and the individual's right to prepare for his own defense. See generally Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091 (1951); Quinn, McCray v. Ill.: Probable Cause and the Informer Privilege, 45 Denver L.J. 399 (1968); Comment, Disclosure of Informers' Identities, 17 Hastings L.J. 99 (1965); Comment, An Informer's Tale: Its Use in Judicial and Administrative Proceedings, 63 Yale L.J. 206 (1953); see also State v. Burnett, 42 N.J. 377, 201 A.2d 39 (1964).
In summary, we adopt the following rule: In any preliminary hearing in a criminal trial or other proceeding, the evidence of information communicated to a peace officer from a confidential informer, who is not a material witness to the guilt or innocence of the accused of the offense charged, shall be admissible on the issue of reasonable cause to make an arrest or search, without requiring that the name or identity of the informer be disclosed, if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informer and in his discretion does not require disclosure of the informer's identity.
The informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief. We are not dealing with the trial of a criminal charge itself. In a trial on the merits of a criminal charge, the need for a truthful verdict outweighs society's need for the informer privilege. The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause under the restrictions outlined above. It is within the sound discretion of the trial judge who hears the motion to suppress, or the objection of the State, to decide whether he needs such disclosure as to the informer in order to decide whether the officer is a believable witness. A magistrate must be informed of some of the underlying circumstances from which the informer concluded that the defendant was guilty of the offense, and some of the underlying circumstances from which the officer concluded that the informer was credible or his information reliable.
*785 Several cases from this jurisdiction have held that the prosecution is not privileged to withhold from an accused disclosure of the identity of an informer. Mapp v. State, 148 Miss. 739, 114 So. 825 (1927); Hamilton v. State, 149 Miss. 251, 115 So. 427 (1928); Ford v. City of Jackson, 153 Miss. 616, 121 So. 278 (1929); Harris v. State, 216 Miss. 895, 63 So.2d 396 (1953); Terry v. State, 252 Miss. 479, 173 So.2d 889 (1965); see also McNutt v. State, 143 Miss. 347, 108 So. 721 (1926); Perry v. State ex rel. Wood, Sheriff, 150 Miss. 293, 116 So. 430 (1928); McGowan v. State, 184 Miss. 96, 185 So. 826 (1939). However, none of these cases considered the established common-law rule establishing an informer's privilege. In none of these cases was the informer "reliable" in the sense that he had in the past given trustworthy information, nor did they consider the basis-of-knowledge test. To the extent that these and any related cases are inconsistent with the decision this day rendered, they are hereby modified and overruled.
Affirmed.
All Justices concur.

APPENDIX
THE reasons and facts for the request of this search warrant are:
On 12-14-67 the Whitney National Bank, located 3740 Elysian Fields was robbed by negro gunman of approximately $40,000.00, and reported to the N.O.P.D. under Police item L-9542-67.
On 1-29-68, Detective John Lanza, of the Detc. Bur., received information from a confidential informer, that the robbery had been committed by Willard Manuel, negro male, and Willie Strode, negro male, both subjects from Chicago, Ill. This confidential informer has given Detective John Lanza good information in the past which has been proved to be reliable, and has led to the arrest and convictions of other persons involved in the same type of activity. The informer stated that the money from this robbery, has been stored mostly in three safety deposit boxes, namely boxes 220 and 454 located in the International City Bank, located 321 St. Charles Ave., and safety deposit box # 539 in the Whitney National Bank, located 228 St. Charles Ave., further that these subjects were living in room # 134 of the Tamanaca Downtown Motel, located 1725 Tulane Ave., New Orleans, La. The informer stated that items of the armed robbery were located in room 134 of the Tamanaca Downtown as afore listed in this search warrant application.
On 1-29-68 both Willard Manuel and Willie Strode, were arrested outside of the International City Bank, as had been arranged by the informer. At the time of the arrest Manuel and Strode were in possession of keys and forms for the three above mentioned safety deposit boxes in both the International City Box, and Whitney National Bank.
During the interrogation of the arrested subjects, they explained that they had smuggled in a kilo of raw heroin, in an effort to explain the reason for the safety deposit boxes, stating that some large amount of currency was stored in the boxes. Checked with Agt. Roger Coston of Federal Narcotics Bureau, who stated to Det. Favoloro that Willard Manuel was well known in the Chicago Narcotic rackets. Checked with the Tamanaca Downtown Motel located 1725 Tulane Ave., and verified that room 134 was rented to the two arrested subjects. Further that they had put some items on safety deposit box # 2 at the motel. The items are unknown to the management of the Motel. Afore stated is the reason for the search of room 134 and safety deposit box # 2 at the Tamanaca Downtown Motel.

*786 ON PETITION FOR REHEARING
PATTERSON, Justice.
The petition for rehearing in this cause is hereby denied. The basis for the denial is Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).
All Justices concur.