327 So.2d 255 (1976)
John Michael JOYCE
v.
STATE of Mississippi.
No. 48701.
Supreme Court of Mississippi.
January 6, 1976.
Rehearing Denied January 27, 1976.
*256 W.S. Moore, Julie Ann Epps, Thomas J. Ginger, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs and Vera Madel Speakes, Sp. Asst. Attys. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and SMITH and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:
John Michael Joyce was indicted, tried and convicted in the Circuit Court of Rankin County, Mississippi, of the crime of possession of marijuana with intent to sell. His sentence was eight years in the Penitentiary.
About 2:00 p.m., August 27, 1974, Alvin E. Berry, Jr., an agent with the Mississippi Bureau of Narcotics, received a telephone call from a confidential informant. The informant advised Agent Berry that he had information that approximately 60 pounds of marijuana would arrive later that afternoon at the Jackson Municipal airport, and that Buddy Rogers and Jeb Grace would pick it up. Berry asked for more information and the informant called back in about 45 minutes and told him that there had been a change in plans and that Larry Wann would meet a subject arriving from Phoenix, Arizona, around 4:00 or 5:00 p.m. with the 60 pounds of marijuana. According to the informant, Wann would buy the marijuana and resell it to Grace and Rogers.
Berry testified that he checked the Bureau's card index and found a card listing Larry Wann as a possible drug trafficker. He then got from the driver's license bureau of the Mississippi Highway Patrol an exact description of Wann. Berry, along with four other Bureau agents, then proceeded to the Jackson Municipal Airport to further investigate and check out the information supplied by the informant.
The agents learned that a flight from Phoenix, Arizona, was due to arrive at 5:16 p.m. At approximately 5:10 p.m., as had been predicted by the informant, an individual matching Wann's description was observed waiting at Gate 15 for the arrival of Delta Flight 520 from Phoenix, Arizona. Wann met appellant and Jo Ann Saczynski when they deplaned, and the three of them went to the baggage claim area where Wann picked up two brown suitcases.
Berry observed from the way Wann was walking that the two suitcases were quite heavy. Wann carried them to his car and put them in the trunk. As all three walked to Wann's car, the agents observed them nervously looking over their shoulders as if to see if any one were watching or following them. Wann drove very slowly from the parking lot and Berry noted that he frequently looked in the rearview mirror and that Joyce and Saczynski frequently looked behind them through the rear window. When Wann turned onto state highway 475 and reached a point a mile or so from the municipal airport, Berry turned on his blue light and stopped Wann's car. The other four agents also stopped and approached Wann's car.
At Berry's request, Wann opened the trunk of his car, and, upon inquiry by Berry, *257 Wann indicated that the suitcases belonged to appellant Joyce. Appellant refused Berry's request to open the suitcases unless the agents had a search warrant. Agent Wallace forcibly opened the suitcases and found five white plastic bundles, each containing three kilo bricks of marijuana wrapped in brown paper in one suitcase, and four white plastic bundles, each containing three kilo bricks of marijuana wrapped in brown paper in the other suitcase. A kilo brick usually weighs about 2.2 pounds, so the 27 kilo bricks weighed approximately 59.4 pounds.
All three occupants of the car, Joyce, Wann and Saczynski, were then placed under arrest, explained their rights, and then taken to the Rankin County jail for confinement.
Appellant first contends that he was convicted of possession with intent to sell marijuana, which this Court has held is not a crime under the laws of the State of Mississippi. Appellant is correct.
In Schloder v. State, 310 So.2d 721 (Miss. 1975), we said that possession of marijuana with intent to sell was not made a criminal offense under the provisions of Mississippi Code Annotated section 41-29-139(a), (Supp. 1974), but that under the provisions of section 41-29-139(d)(2)(B), (Supp. 1974), possession of more than one ounce of marijuana was made a criminal offense.
Since the evidence was clear and uncontradicted that Joyce had in his possession 59.4 pounds of marijuana, the only verdict that the jury could return would be that Joyce was guilty of the crime of having more than 1 ounce of marijuana in his possession. Since the indictment properly charged this lesser offense, we affirm the conviction of this lesser offense, but remand this case for resentencing under section 41-29-139(d)(2)(B), (Supp. 1974), for the offense of possession of more than one ounce of marijuana.
Appellant also assigns as error the overruling of his motion to quash indictment because the grand jury returning the indictment was not legally constituted and for that reason the indictment would be void. This argument was based on the fact that appellant was indicted on October 9, 1974, by the grand jury empaneled at the July 1974 term of the Rankin County Circuit Court, which grand jury by order of the circuit court dated September 30, 1974, was "recalled into session on October 8, 1974 at 9:00 o'clock A.M. to consider such matters as may properly be presented to it."
Appellant's contention is that the grand jury empaneled at the July 1974 term went out of existence when the July term ended, and that also the August, 1974, term intervened. This would have been a good argument if the offense had occurred and if the appellant had been indicted before February 1, 1973, but by House Concurrent Resolution No. 4 of the 1972 regular session of the Legislature, section 264 of Article 14 of the Mississippi Constitution was amended. H.C.R. No. 4 was entitled:
"A CONCURRENT RESOLUTION to amend Section 264, Mississippi Constitution of 1890, to allow the Grand Jury to remain empaneled between terms of Circuit Court."
This amendment was ratified by the electorate and was inserted in the Constitution on November 22, 1972. Section 264, as amended, reads:
"The legislature shall, by law, provide for the qualifications of grand and petit jurors. The legislature shall provide by law for procuring a list of persons so qualified, and the drawing therefrom of grand and petit jurors. After February 1, 1973, grand jurors may serve both in termtime and vacation and any circuit judge may empanel a grand jury in termtime or in vacation." (Emphasis added).
*258 The primary purpose in amending Section 264 was to allow a grand jury to remain empaneled until the next term of criminal court. The intervening August 1974 term of court, according to legislative mandate in Mississippi Code Annotated section 9-7-53 (1972), was "for civil business exclusively". The October, 1974, term was the next term of court at which criminal business could be heard and a grand jury empaneled, but this term could not legally open until October 14, 1974. The court was correct in recalling the July 1974 grand jury to act in vacation between terms.
Appellant next contends that: "The trial court erred in overruling Appellant's Motion to Suppress Evidence seized as a result of an unreasonable, unlawful and unconstitutional arrest, search and seizure."
Joyce argues that "at the time of the arrest, the officers, who acted without a warrant, lacked probable cause to believe that a felony had been committed or that Appellant and his co-indictees were the persons who had committed that felony so as to justify the warrantless search of the automobile and its contents as incident to a lawful arrest."
In Wolf v. State, 260 So.2d 425 (Miss. 1972) (cert. denied, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492), this Court said:
"On the probable cause question, the standards applicable to a search of an automobile without a warrant are substantially the same as those required for a search warrant. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).
"Aguilar [Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)] laid down the two-pronged test applicable to the factual basis supporting a magistrate's assessment of probable cause for a search warrant, and that test applies with respect to an officer's assessment of probable cause for a warrantless search. As already stated, the defendant in this case concedes that the informer involved here was reliable under the Aguilar test. It remains to be determined whether the evidence offered on the motion to suppress was sufficient to meet the Aguilar basis-of-knowledge test [as] applied and expounded on in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the later case of United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the Court again considered the requirements of the underlying factual basis necessary for the issuance of a search warrant, and enunciated the court's commonsense and nontechnical approach in reviewing probable cause questions by quoting from United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), as follows:
"[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one here, must be tested in a commonsense and realistic fashion. They are normally drafted by the non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. (91 S.Ct. at 2079, 29 L.Ed.2d at 730)."
260 So.2d at 428. (Emphasis added).
Agent Berry testified that he had dealt with the confidential informant on "numerous" occasions in the past two-and-a-half months, and that he had found him honest, credible and reliable. The information furnished was not only investigated and corroborated, when first received, but also *259 when the agents went to the airport and personally observed Joyce, Wann and Saczynski as they met, picked up two heavy suitcases as their baggage, nervously and apprehensively looked over their shoulders as they proceeded to Wann's car and locked the suitcases in the trunk, and finally as they drove away with Wann checking through the rearview mirror and Joyce and Saczynski through the rear window to see if they were being watched or followed.
As this Court said in Strode v. State, 231 So.2d 779 (Miss. 1970):
"The second reliability test is an attempt to guard against tips provided by untruthful or unreliable informers, and suggests that an informer is credible if he has provided truthful tips in the past. Moreover, the information may be deemed reliable if corroborated by independent investigation. Both tests require only that some of the underlying circumstances be sworn to. Furthermore, in Spinelli, the Court indicated that the basis-of-knowledge test could be fulfilled without a statement of the circumstances from which the informer derived his information; i.e., if a tip is sufficiently detailed, it may be self-verifying, and one may conclude that the informer was not relying on mere rumor. In the instant case, the tip, because of its great detail and corroboration, was self-verifying, and in addition, there was independent corroboration by the New Orleans officers." (Emphasis added). 231 So.2d at 783.
The tip verified itself in this case. The informant advised that approximately 60 pounds of marijuana would be brought in on a flight from Phoenix, Arizona, to the Jackson Municipal Airport on August 27, 1974, at approximately 5:00 p.m.; that Larry Wann would meet the subject bringing in the marijuana and would transport it away from the airport. Wann did meet Joyce and Saczynski; Wann did pick up two suitcases, carry them to his car and lock them in the trunk, and finally Wann did drive carefully away from the airport with the contraband under lock and key in the car trunk.
Not only does the evidence prove the tip to be self-verifying, but also that an independent investigation was made before Wann's car was stopped and searched. The narcotics agents observed Wann picking up two very heavy suitcases at the baggage checkout and carrying them to his car. Sixty pounds of marijuana compressed in kilo bricks does not occupy much space. It could be carried in suitcases, but it would make them heavier than usual. They observed Joyce and his companions furtively and nervously looking around to see if anyone was watching them and then as they drove slowly away from the airport the agents observed Wann, the driver, frequently looking in his rearview mirror and appellant and Saczynski, the passengers, frequently looking through the rear window.
In Polanco v. Estelle, 507 F.2d 81 (5th Cir.1975), the Fifth Circuit Court of Appeals said:
"Regardless of the sufficiency of the affidavit as to the informer's reliability, the facts revealed by the police surveillance furnished independent corroboration of the informant's tip sufficient to establish probable cause." 507 F.2d at 82.
Also, the narcotics agents in this case were working under emergency conditions and in an extremely tight timeframe. The final information from the confidential informant was not furnished until about 2:45 p.m. A physical description of Wann had to be obtained. Agent Berry had to enlist the help of four other narcotics agents, brief them, assign duties, and otherwise organize the joint operation.
One flight from Phoenix, Arizona, would arrive at 4:05 p.m. The agents had to travel about 10 miles from their headquarters in Jackson to the Jackson Municipal Airport in Rankin County, and be there *260 to check this flight. Nothing arrived, so the agents waited at the airport for the 5:16 p.m. flight.
The contraband on arrival by plane would be moved immediately by automobile to an unknown location. The narcotics agents simply did not have time, under the exigent circumstances of this case, to locate a magistrate and secure a search warrant.
We said in Hall v. State, 288 So.2d 850 (Miss. 1974):
"There is a constitutional difference between searches of houses and cars. Cady v. Dombrowski, supra [413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)]. For reasons stated in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); and Wolf v. State, 260 So.2d 425 (Miss. 1972), cert. denied, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972), the warrantless search of an automobile, because of its mobility, presents a different problem from a warrantless search of a house. An automobile may be searched, given the proper circumstances, without a warrant either as an incident to a valid arrest or because there is probable cause that the vehicle itself may be evidence of crime or contain something that offends against the law. (Emphasis added).
* * * * * *
"The courts have struggled, largely in vain, to fashion practical standards for determining the reasonableness of a warrantless search of a motor vehicle. The difficulty lies in the infinite variety of factual situations confronted by law enforcement officers in the line of duty. The courts can best serve the administration of justice by recognizing that although the court must determine whether a search is reasonable, the officer's action must be reviewed in light of the practical, everyday affairs of life." 288 So.2d at 851-52.
In Strode, Chief Justice Ethridge also suggested a common sense test in determining whether there was probable cause, when he said:
"Probable cause is a practical, nontechnical concept, based upon the conventional considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 231 So.2d at 782.
Under the emergency conditions of the case at bar, we think the narcotics agents acted as reasonable and prudent men when they stopped the moving car of Wann and searched it for contraband, without having first obtained a search warrant.
In assignment of error No. 4, the appellant contends that: "The trial court erred in sustaining the prosecution's objections to questions designed to show that John Robertson was the confidential informant in this case; ... ."
This Court adopted the McCray rule [McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)], in Strode, modifying and overruling a long line of cases in so doing:
"In summary, we adopt the following rule: In any preliminary hearing in a criminal trial or other proceeding, the evidence of information communicated to a peace officer from a confidential informer, who is not a material witness to the guilt or innocence of the accused of the offense charged, shall be admissible on the issue of reasonable cause to make an arrest or search, without requiring that the name or identity of the informer be disclosed, if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informer and in his discretion does not require disclosure of the informer's identity." 231 So.2d at 784. (Emphasis added).
*261 In assignment of error No. 5, the appellant contends that:
"The trial court erred in overruling the Appellant's Motion to Quash Indictment and Petit Venire, which alleged that Miss. Code Ann. § 13-5-1 (1972)  insofar as it denied the right, duty and obligation of persons 18, 19, and 20 years of age, to serve on grand and petit juries in Mississippi  was violative of the rights guaranteed to this Appellant under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States."
This Court answered this same contention in Johnson v. State, 260 So.2d 436 (Miss. 1972), wherein we said:
"It is alleged that there were no jurors within the age group of appellant (18-20) on either the grand jury or the petit jury. It is argued that because this age group has been permitted by amendment to the United States Constitution to register and vote, they should be on the jury lists. Our Legislature has prescribed qualifications for jurors in Section 1762 Mississippi Code 1942 Annotated (Supp. 1971); and as a part thereof is the requirement that jurors be twenty-one years of age or older. The fact that the Constitution of the United States was amended by Amendment XXVI does not qualify persons under twenty-one years of age as jurors under State laws." 260 So.2d at 437.
The same answer was made in State v. Spivey, 328 A.2d 414 (R.I. 1974); Payne v. State, 233 Ga. 294, 210 S.E.2d 775 (1974); State v. McKinney, 302 So.2d 917 (La. 1974); Hopkins v. State, 19 Md. App. 414, 311 A.2d 483 (1973); and Shelby v. State, 479 S.W.2d 31 (Tex.Cr.App. 1972). Federal courts are likewise in accord. United States v. Olson, 473 F.2d 686 (8th Cir.1973), cert. den. 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970, and the many cases cited therein; United States v. Dukes, 479 F.2d 324 (5th Cir.1973); and United States v. McVean, 436 F.2d 1120 (5th Cir.1971), cert. den. 404 U.S. 822, 92 S.Ct. 45, 30 L.Ed.2d 50.
The conviction of the lesser offense of possession of more than one ounce of marijuana is affirmed, but this case is remanded to the trial court for resentencing for this lesser offense.
This case was considered by a conference of the Judges en banc.
Affirmed as to lesser offense, but remanded for resentencing.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, SUGG, WALKER and BROOM, JJ., concur.
PATTERSON and INZER, JJ., dissent.
RODGERS, Presiding Justice (concurring):
I concur in the conclusion reached by the majority opinion in this case. I think that the search for contraband under the facts here exhibited was properly conducted by the officers without a search warrant for the following reasons.
The officers had information from a reliable informer that contraband (marijuana) would arrive in Jackson, Mississippi, at a certain time and place. Of course, the officers could not obtain a search warrant because they did not know what was to be searched. They proceeded to investigate the person who was said to be the one who would "pick up" the contraband. The officers went to the airport and, after having located the suspect, observed his acts in obtaining heavy suitcases, and the acts of the other persons who joined the suspect. These observations, in my judgment, gave the officers probable cause to believe that the suspect and his companions had contraband in their possession. It, therefore, became the duty of the officers to search for and seize any existing contraband.
*262 The Fourth Amendment to the United States Constitution is based upon the words "against unreasonable searches" and "upon probable cause." See 79 C.J.S. Searches And Seizures § 8, at 786 (1952).
It may be emphasized that a search of automobiles which are constantly being moved is in a different situation from the search of a house or a permanently located "place." Martin v. State, 190 Miss. 898, 2 So.2d 143 (1941); Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The search of an automobile, however, must meet the test of reasonableness. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Nevertheless, it is well settled in this state [Eady v. State, 153 Miss. 691, 121 So. 293 (1929)], and under the Federal rule that a motor vehicle moving upon the highways may be searched for contraband if the facts are such as to warrant a man of reasonable caution to believe that contraband is being transported in violation of law. Jones v. State, 170 Miss. 741, 155 So. 416 (1934); Story v. City of Greenwood, 153 Miss. 755, 121 So. 481 (1929); Moore v. State, 138 Miss. 116, 103 So. 483 (1925); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Saldana v. Beto, 394 F.2d 827 (C.A.5th 1968); Bailey and Smith v. United States, 386 F.2d 1 (C.A.5th 1967); Maltos-Roque v. United States, 381 F.2d 130 (C.A.5th 1967); Kudy and Langtry v. United States, 48 F.2d 1076 (C.A.6th 1930); Johnson v. State, 8 Md. App. 28, 257 A.2d 756 (1969); 79 C.J.S. Searches And Seizures § 17, at 792 (1952).
Moreover, such facts may be communicated to an officer not only by a reliable source stating that the automobile contains contraband, but such probable cause may be determined by any of the officer's five senses, for example, the smell of marijuana [Fernandez v. United States, 321 F.2d 283, 286 (C.A.9th 1963)] or the smell of intoxicating liquor [Eady v. State, supra].
This rule is not based upon the authority of the officer to make an arrest. The United States Supreme Court pointed this out in Carroll, supra, wherein the Court said:
"But the theory is unsound. The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." (267 U.S. 158, 159, 45 S.Ct. 287, 39 A.L.R. 803)
The right to search an automobile for contraband does not give an officer the authority to search an automobile upon mere suspicion, or so-called "hunches." This Court has pointed out that the fact that the officers failed to make an arrest after a lawful search did not prevent the introduction of the evidence obtained by the search. See the cases cited in Pendergraft v. State, 191 So.2d 830, 838 (Miss. 1966). An officer's authority must be based upon the reasonable belief and understanding of an ordinary reasonably prudent man under similar circumstances, that contraband is being unlawfully transported in the automobile sought to be searched. See the cases collected in Annot., 89 A.L.R.2d 715, 734 (1963); Jones v. State, 170 Miss. 741, 155 So. 416 (1934); Smith v. State, 160 Miss. 56, 133 So. 240 (1931); 79 C.J.S. Searches And Seizures § 66, at 838 (1952).
An officer is not the final judge as to whether or not he has acted on probable cause or had sufficient information on which to act. Probable cause is an issue for the court to decide. McGowan v. State, 184 Miss. 96, 185 So. 826 (1939); Creel v. State, 183 Miss. 158, 183 So. 510 (1938); McNutt v. State, 143 Miss. 347, 108 So. 721 (1926); Moore v. State, 138 Miss. 116, 103 So. 483 (1925); 79 C.J.S. Searches And Seizures § 8, n. 54, at 787 (1952).
*263 It is pointed out by the text writer in 79 C.J.S. Searches And Seizures § 8, at 787-88 (1952):
"What constitutes a reasonable or unreasonable search and seizure in any particular case is purely a judicial question, determinable from a consideration of the circumstances involved, including the purpose of the search, the presence or absence of probable cause, the manner in which the search and seizure was made, the place or thing searched, the character of the articles procured, and the nature and importance of the crime suspected."
Of course, the lawfulness of a search cannot be established by what is brought to light by the search; however, it has been pointed out that the officer's claim of good faith in making the search and seizure may be materially supported by the subsequent discovery of contraband being then and there illegally transported. See 79 C.J.S. Searches And Seizures § 51, at 810 (1952).
The reasonable search of an automobile without a warrant is based upon the doctrine of an emergency, and in this case, there was not sufficient time for the officers to obtain a search warrant for the automobile in which the contraband was being transported.
I, therefore, concur in the majority opinion in this case.
PATTERSON, Justice (dissenting):
The illogic of an ancient principle outweighing sixty pounds of marijuana is reflected by the vote in this case. In my opinion, however, the Bill of Rights of the Constitution is worthy of protection from the erosions of the moment.
The concept of the citizens' security from unreasonable searches and seizures by an agency of the government, either state or federal, is of early origin and is imbedded in the Fourth Amendment to the United States Constitution and Article 3, Section 23, Mississippi Constitution (1890) under their Bills of Rights. The need of security from governmental oppression was earlier expressed in two English cases, Entick v. Carrington, 19 How.St.Tr. 1029 (1765), and Wilkes v. Wood, 19 How.St. Tr. 1153 (1763). The statement of Lord Chief Justice Pratt in Wilkes is as appropriate now as it was then. It is:
... A discretionary power given to messengers to search wherever their suspicions may chance to fall .. . certainly may affect the person and property of every man in this kingdom, and is totally subversive to the liberty of the subject. (19 How.St.Tr. at 1167).
I observe from the record no fact other than hearsay conversation, four times removed, to support this warrantless search. The corroborating circumstances, both legal and usual, of there being an inbound flight to this city from Arizona where a suspect from the hearsay conversation would meet an unknown passenger with luggage, does not, in my opinion, ascend to probable cause. However, assuming these factors equate with probable cause, then I think the determination should have been made by a neutral and detached judge and a warrant issued so that the citizen's right against unreasonable searches and seizures could have been protected. There was time, in my opinion, for the officers to have obtained a search warrant and they, if impressed by the facts at hand, should have obtained one.
The self-verification of probable cause by the majority opinion is anchored to the sixty pounds of contraband revealed by the forceful search of the appellant's luggage. Without it there would have been no verification and of course we have held on numerous occasions, as other courts have done, that the result will not be considered in determining whether probable cause existed at the time of the search. I presently fear that suspicions and assumptions have been carefully nurtured and forced to blossom into probable cause.
*264 This Court is often exposed to the difficult question of determining probable cause and in each instance there is contraband or other evidence before our eyes, buttressing the officer's good intentions in making a warrantless search. We are not exposed to the other side of the coin, the trespass upon the individual's right of security when the search reveals nothing. The victim has only the fruitless, futile and expensive right to sue the officer for the abuse. This encourages his silence and promotes the erosion of the great principle.
I therefore dissent and hope that the constant exposure to one side of the coin will not cause us to become forgetful and thus callous to the other.
INZER, J., joins in this dissent.