396 So.2d 1015 (1981)
Mary Lee MOSLEY
v.
STATE of Mississippi.
No. 52445.
Supreme Court of Mississippi.
March 4, 1981.
Rehearing Denied April 29, 1981.
*1016 Roy Pitts, Frank Coleman, Meridian, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Mary Lee Mosley was convicted in the Circuit Court of Lauderdale County, Honorable Henry Palmer, presiding, on a charge of possession of more than one (1) ounce of marijuana and was sentenced to serve a term of three (3) years with the Mississippi Department of Corrections. She has appealed and assigns six (6) errors in the trial below.

I.
Did the lower court err in refusing appellant's request for a peremptory instruction of not guilty?
On May 25, 1975, about 2:45 p.m., five (5) Lauderdale County officers went to appellant's home in Meridian for the purpose of executing a search warrant and searching her premises. When they arrived, appellant was not at home, but the officers were met by a young black female who admitted them into the house and said she was Linda Williams, appellant's daughter. The search produced 55.9 grams of a substance that was later identified as marijuana. It was found in the closet of appellant's bedroom (the premises were owned by appellant) beneath a dress belonging to appellant. She was arrested in downtown Meridian later that afternoon and was charged with possession of the contraband. On the trial, appellant denied possessing the marijuana or knowing any woman by the name of Linda Williams, and stated that her daughter was Brenda Gathright. Appellant testified that she operated an informal restaurant or cafe in her home where she served meals, and that the dining area was open to patrons, who had access to the remaining rooms of the house. Testimony of a neighbor indicated that when the officers arrived to conduct the search, two (2) individuals were seen hurrying down an alley near the premises.
The State argues that appellant owned the premises, the bedroom and closet where the marijuana was found were occupied and used by her, the dress which concealed the *1017 contraband was owned by her, and that appellant had the exclusive constructive possession of the marijuana. To the contrary, appellant contends that she did not have the exclusive constructive possession of the marijuana, but that other people had access to the area and, therefore, she should be discharged. In Powell v. State, 355 So.2d 1378 (Miss. 1978), discussing the question, this Court said:
"The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. Sisk v. State, 290 So.2d 608 (Miss. 1974).
* * * * * *
Several cases involving possession of contraband found upon premises to which others have access have come before us and there is no rigid rule that can be stated to govern every conceivable case, but each case must be decided upon its peculiar facts. Although this case is close upon the facts, our judgment is that the evidence was sufficient to raise a jury issue." 355 So.2d at 1379.
See also Curry v. State, 249 So.2d 414 (Miss. 1967).
On request for peremptory instruction, the court considers all evidence introduced which is favorable to the State, along with reasonable inferences, and, if they are sufficient to support a verdict of guilty, the request for peremptory instruction of not guilty will be denied. Warn v. State, 349 So.2d 1055 (Miss. 1977).
Appellant testified, and admitted on cross-examination, that she had been convicted within the previous two (2) weeks of the unlawful sale of marijuana. While that evidence is admissible only for the purpose of reflecting upon the credibility of the witness, it was a fact which the jury could consider in arriving at its verdict.
We are of the opinion that the evidence for the State, together with reasonable inferences, presented a guilt issue for determination by the jury and the lower court correctly refused the requested peremptory instruction.

II.
Did the lower court err in overruling appellant's motion to suppress the evidence?
The officers appeared before Justice Court Judge Lee Roberts, where a standard affidavit for search warrant was executed by four (4) police officers. A typewritten statement of supporting facts and circumstances constituting probable cause was signed by them and attached to the affidavit. It included the following information:
(a) Police had received numerous complaints from area residents of appellant's drug activity in the house to be searched;
(b) Police had personal knowledge appellant resided in the house;
(c) Appellant had been previously arrested for and pled guilty to charges of unlawful possession of marijuana;
(d) Known drug traffickers were seen entering and leaving the premises; and
(e) A confidential informant had made two (2) prior controlled purchases of marijuana from appellant.
In addition to the underlying statement of facts, the justice court judge received oral information of additional facts from officers who had been sworn by the court.
Appellant contends that the action of the officers and magistrate in obtaining and issuing the search warrant do not meet the rule required in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and subsequent decisions of the United States Supreme Court and this Court on the question. In O'Bean v. State, 184 So.2d 635 *1018 (Miss. 1966), following Aguilar, this Court stated:
"The Court further held that the purpose of the affidavit is to enable the appropriate magistrate to determine the existence of probable cause from the facts alleged therein. In making this determination the Court held that the magistrate could not accept the mere conclusion of the affiant, but must base the issuance of a warrant upon some of the underlying facts or circumstances, as to do otherwise would be to accept the affiant's determination rather than his own. In short, the acceptance of an inference or conclusion of the affiant by the magistrate is merely to `rubber stamp' the belief of the investigating officer." 184 So.2d at 368.
In Strode v. State, 231 So.2d 779 (Miss. 1970), the Court commented upon information received from a confidential informant, which was part of the facts presented to the magistrate, and said:
"The two-part test of Aguilar requires a magistrate to be informed of (1) some of the underlying circumstances from which the informer concluded that the defendant was the one guilty of the offense, and (2) some of the underlying circumstances from which the officer concluded that the informer was credible or his information reliable." 231 So.2d at 783.
See also Lampkin v. State, 389 So.2d 113 (Miss. 1980).
We hold that the justice court judge had probable cause upon which to issue the search warrant.

III.  IV.
Did the lower court err in granting Instruction S-2?
Did the lower court err in refusing appellant's Instruction D-9?
The lower court granted Instruction S-2 requested by the State, which follows:
"The Court instructs the Jury that to constitute a possession, there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession; constructive possession may be shown by establishing that the substance involved was subject to the defendant's dominion or control."
The lower court declined to grant to the appellant Instruction D-9 which follows:
"The Court instructs the Jury that if there be any facts or circumstances in this case, susceptible of two interpretations, one favorable and the other unfavorable to the accused, and when the Jury has considered such facts and circumstances with all the other evidence, there is a reasonable doubt as to the correct interpretations, then you must resolve such doubt in favor of the accused and place upon such facts and/or circumstances the interpretation favorable to the Defendant."
Appellant contends that the Instruction S-2 was erroneous for the reason that it is an abstract instruction and does not relate to the facts of the case. While we recognize that abstract instructions, as a general rule, should not be granted, when this instruction is read together with all other instructions in the case, it is not prejudicial to the appellant and does not constitute reversible error. Quick v. State, 309 So.2d 859 (Miss. 1975).
The appellant also argues that the court erred in refusing her requested Instruction D-9, which is known as the "two-theory" instruction. Such an instruction is never authorized or given except in a purely circumstantial evidence case. However, appellant was given Instruction D-2, which told the jury that appellant was presumed innocent unless the evidence convinced them to the contrary beyond all reasonable doubt and to the exclusion of every reasonable hypothesis which may be consistent with her innocence, and Instruction D-4 which told the jury that before conviction it must find appellant guilty "to the exclusion of every reasonable theory consistent with her innocence." Instructions D-6 and D-10 contained similar language. Thus, it may *1019 be seen that the question was submitted to the jury by four (4) other instructions. The court did not err in refusing the Instruction D-9.

V.
Did the lower court err in declining to quash the indictment for undue influence and denial of due process of law?
The appellant moved the court to quash the indictment alleging undue influence upon the grand jury and denial of rights guaranteed by the Constitution and laws of the United States and the State of Mississippi. She contends that the grand jury room, where deliberations were conducted, which resulted in the present charge on the indictment against appellant, was within and adjacent to, the district attorney's quarters in the Lauderdale County Courthouse. [See Appendix]. Grand jurors, members of the district attorney's office and other witnesses testified on the motion. The appellant contends that grand jurors in going to and from the grand jury room were required to pass through the reception room of the district attorney's office, where the district attorney's secretary and aides were present, that they drank coffee and ate snacks in the district attorney's quarters and that the district attorney's office exercised undue influence upon the grand jurors in their deliberations of criminal matters, including the present one.
In Price v. State, 152 Miss. 625, 120 So. 751 (1929), commenting upon a similar question to that posed here, the Court said:
"The court must indulge the presumption that the grand jury is composed of men who have a reasonable degree of intelligence and would perform their duties in accordance with the law and the evidence before them.
It does appear that there was other evidence before the grand jury. It would be adopting too rigid a rule to apply to the grand jury the strict rules applied to a trial jury in the trial on the merits. The grand jury is an independent body, and its members are not usually versed in legal rules of procedure and evidence. It is probably true that in each county in the state the grand jurors are approached and talked to by the citizens with a view of having certain conditions investigated and proper indictments returned. The members are not restrained during their investigation, but go at will amongst other people during their work." 152 Miss. at 642-643, 120 So. at 755.
Suffice it to say, the evidence does not reflect undue influence upon the grand jurors by the district attorney or members of his office, and we find no reversible error in the lower court's refusal to sustain the motion to quash the indictment. However, it is the responsibility of trial judges to make certain that grand jury deliberations are not subject to influence, whether from individuals, officers, or location of the grand jury room. The grand jury, a cornerstone of criminal jurisprudence, must remain free from suspicion and distrust and must always rest on a plane so high that no criticism can attach to it. When impaneled, grand jurors are administered an oath that they will not present any person through malice, hatred or ill will, nor leave any person unpresented through fear, favor or affection, or for any reward, hope, or promise thereof. Persons who are investigated by the grand jury also have the right to be free of distrust, suspicion, and frustration toward the grand jury.
While the charge involved on this record was not the result of undue influence, other indictments may not withstand such a motion. We refer this matter to the learned trial judges of Lauderdale County and suggest that they see that future grand juries are located in quarters where no such criticism as here may be levied against them.
We have considered the other assignments of error, find no merit in them, and the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
*1020