330 So.2d 602 (1976)
Danny W. INGRAM
v.
STATE of Mississippi.
No. 48900.
Supreme Court of Mississippi.
March 9, 1976.
Rehearing Denied May 11, 1976.
*603 Johnston, Pritchard & Wright, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by John C. Ellis, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and SUGG, JJ.
SUGG, Justice.
We have considered defendant's nine assignments of error, but only two require discussion. (1) Was the indictment against defendant void because it was returned by a grand jury empanelled in April 1974 and reconvened September 23, 1974 after an intervening term of court in July? (2) Was there a fatal variance between the indictment and the proof offered by the state?
Defendant was convicted in the Circuit Court of Jackson County for the sale of heroin and sentened to a term of ten years in the state penitentiary. He argues that under our decisions in Joyce v. State, 1976, 327 So.2d 255 and Tubby v. State, 1976, 327 So.2d 272, the indictment was void.
In Joyce defendant was indicted in October 1974 by a grand jury which was empanelled at the July 1974 term of the Rankin County Circuit Court and reconvened after the August 1974 civil business term intervened. Mississippi Code Annotated section 9-7-53 (1972) provides for circuit court terms in Rankin County in the following language:
Rankin County: On the second Monday of January, thirty-six (36) days; on the first Monday of May, eighteen (18) days for civil business exclusively; on the second Monday of July, eighteen (18) days; on the third Monday of August, twelve (12) days for civil business exclusively; and on the second Monday of October, twenty-four (24) days.
We held that the grand jury was legally reconvened under the statute and under Article 14, Section 264 of the Mississippi Constitution, as amended in 1972, and stated:
The primary purpose in amending Section 264 was to allow a grand jury to remain empaneled until the next term of criminal court. The intervening August 1974 term of court, according to legislative mandate in Mississippi Code Annotated section 9-7-53 (1972), was "for civil business exclusively". The October, 1974, term was the next term of court at which criminal business could be heard and a grand jury empaneled, but this term could not legally open until October 14, 1974. The court was correct in recalling the July 1974 grand jury to act in vacation between terms.
In Tubby, supra, defendant was indicted at the September 1974 term by a grand jury empanelled at the September 1973 term of the Circuit Court of Neshoba County. The same grand jury was reconvened *604 for service during the February 1974 term. When the grand jury was initially empanelled the court terms in Neshoba County were fixed by Mississippi Code Annotated section 9-7-27 (1972) as follows:
Neshoba County: On the first Monday of February, eighteen (18) days; on the third Monday of September, twelve (12) days; and on the fourth Monday of October, twelve (12) days for civil business exclusively.
The court terms in Neshoba County were changed by Chapter 319, Laws of 1974, effective March 5, 1974, as follows:
Neshoba County: On the first Monday of February, eighteen (18) days; on the second Monday of July, twelve (12) days for civil business exclusively; on the third Monday of September, twelve (12) days; and on the fourth Monday of October, twelve (12) days for civil business exclusively.
In Tubby we held that the motion to strike the indictment should have been sustained and stated:
The second assignment of error wherein the appellant contended during the trial, and now contends here, that the indictment is void, is well taken. A grand jury may be impanelled at a regular term of court, and it may be recalled at any time before the next criminal term of court in term time or in vacation, but when a new criminal court is convened, a new grand jury must be impanelled. The old grand jury may, however, report indictments obtained in vacation when it makes its final report for final discharge, but, the old grand jury cannot hear evidence and obtain indictments at the second term of the criminal court.
Section 2436,[1] Mississippi Code Annotated 1942 (Rec. 1956) is not applicable to the facts in this case since the indictment was returned by a body of men who were no longer authorized to act as grand jurors. See Joyce v. State, Miss., 327 So.2d 255, 1976.
In our case, the statute[2] fixing the terms of court in Jackson County differ from the statutes involved in Joyce and Tubby in that it specifically provides that a grand jury shall be empanelled at the April and October terms, but leaves the empaneling of a grand jury at the January and July terms discretionary with the circuit judge. Mississippi Code Annotated section 13-5-39 (1972) provides that a grand jury shall not be empanelled for more than two terms of circuit court in each year unless otherwise directed by the circuit judge.[3] The statute requiring two grand juries in Jackson County at the April and October terms, and leaving the empaneling of grand juries at the January and July terms discretionary with the circuit judge, is consistent with section 13-5-39.
Since the statute under consideration is different from those considered in *605 Joyce and Tubby, and since these cases used, without explanation, the words "criminal term" to designate the term at which a grand jury should be drawn and empanelled, it is necessary to define "criminal term" to avoid confusion. "Criminal term" as used in Joyce and Tubby means any term of circuit court fixed by statute unless (1) the statute limits the term to civil business only, or unless (2) the statute specifically gives the circuit judge discretion in the matter of empaneling a grand jury, and none is empanelled. Both civil and criminal cases may be tried at any term unless one class of cases is prohibited by the statute fixing the term.
In our case, the grand jury which indicted defendant was empanelled for the April 1974 term and recalled on September 23, 1974. The July 1974 term intervened between the time the grand jury was empanelled in April and reconvened in vacation in September. Defendant contends that any indictment returned by the grand jury when it reconvened in September was void under the holding of Tubby, supra. He argues that since both civil and criminal cases could be tried at the July term, the July term was a criminal term. It is true civil and criminal cases could be tried at the July term; however, since the calling of a grand jury was discretionary with the judge and none was called, the April grand jury could be recalled at any time after the July term and before the October term which was the next term of court in Jackson County requiring that a grand jury be empanelled. This holding is consistent with our definition of the term "criminal term" as used in Joyce and Tubby.
Of course, if a grand jury had been empanelled at the July 1974 term the April grand jury could not have been recalled after another grand jury had been empanelled at the July term because two grand juries cannot exist in a county at the same time. It naturally follows that when a term of court is convened where a grand jury is required to be drawn the old grand jury is automatically discharged and, as stated in Tubby, may only report indictments obtained in vacation and make its final report. It also follows that a circuit judge may discharge a grand jury at any time.
By way of summary, the effect of Joyce, Tubby and this case is that a grand jury empanelled may not serve after the intervention of a succeeding term of circuit court unless (1) the intervening term is designated for civil business only, or unless (2) the intervening term is one where the judge is specifically given discretion in the matter of empaneling a grand jury, and a new grand jury is not empanelled. The discretion given a circuit judge by Section 13-5-39 to empanel only two grand juries in any given year does not satisfy the requirements of exception (2) in this paragraph.
The second contention of the defendant is that there was a fatal variance between the indictment and the proof. Defendant argues that he intended to give the three grams of heroin to Mack in exchange for an introduction to a person from whom he could buy a large quantity of heroin. He also argues that the money was never placed in his hands; therefore, a sale was not completed, and since he was charged with selling heroin, there is a variance between the indictment and the proof.
On May 10, 1974 Ronald Mack was arrested for possession of heroin. After his arrest he agreed to call the defendant and "set up" a purchase of heroin from the defendant. The telephone conversation between Mack and the defendant was taped and the defendant introduced the taped conversation in evidence. In the conversation Mack asked the defendant, "if he could bring him 3 g's" to which inquiry defendant responded with a question, "Uh ... where at?" Mack told him, "the same place" and the defendant replied, "All *606 right." The time for the meeting was agreed on between Mack and the defendant in the course of the telephone conversation.
Following this telephone conversation Mack and Dean Shepard, an agent for the Mississippi Bureau of Narcotics, met defendant, who was accompanied by his wife. After defendant arrived, Mack and Shepard went to defendant's car. Mack entered the car and sat on the backseat at which time defendant handed the heroin to Mack who in turn handed it to Shepard. Shepard asked defendant how much he wanted for the heroin and the defendant replied $125 per gram. Shepard also asked the defendant if the heroin was good stuff and the defendant replied: "Yes, it was real good, or some words of that nature." Shepard than asked defendant if he had change for a bill and defendant replied that he did not. Shepard went to a drive-in window, changed a bill, came back and counted out $375 for the purchase price of the heroin and tendered the money to the defendant. The defendant did not take the money but told Shepard to give it to Mack. Immediately after the money was given to Mack, two other agents who had the entire scene under surveillance appeared and arrested the defendant.
Defendant testified that he was an informer for the Drug Enforcement Administration and that Jack Taylor was his immediate superior. He testified that he had "set up" some people for the federal narcotics agent in the past and had also worked with the Mod Squad in Mobile, Alabama. He denied that he quoted a price of $125 per gram for the heroin because he intended to give Mack the heroin in exchange for an introduction to an individual from whom he hoped to purchase a large quantity of heroin. Although, according to defendant, it was his purpose to give Mack heroin in exchange for information about a person from whom he could purchase narcotics, when Shepard appeared he did not attempt to pursue his avowed purpose of purchasing narcotics, but instead, according to Shepard and Mack, quoted a price for the heroin which he had just delivered to Mack.
He also testified that he talked to Taylor three days before the events of May 10, 1974 and told Taylor he might be onto something big. He denied that he brought the heroin to Mississippi to sell it. His testimony about the events in the automobile were corroborated by his wife who was present.
Taylor testified in rebuttal that defendant gave him some information in August 1973 which resulted in an arrest in March 1974. Taylor contradicted defendant's testimony with reference to being presently employed by the Drug Enforcement Administration as an informer. He stated that defendant was not in his employ as an informer on May 10, 1974 and he had never authorized defendant to give heroin to any person in exchange for information. He further testified that he had no idea that defendant was in Jackson County on May 10, 1974.
The facts created a jury question and we hold that the jury was justified in finding that a sale was made by defendant to Shepard even though the money never actually reached the hands of defendant. The evidence that defendant quoted a price for the heroin, following which the money was counted out, tendered to him, and then handed to Mack at the direction of defendant is sufficient to support the jury's verdict.
This case was considered en banc and all Justices concur.
Affirmed.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.
NOTES
[1] Mississippi Code Annotated, section 99-11-35 (1972).
[2] Mississippi Code Annotated, section 9-7-49, as amended, (Supp. 1975). Jackson County: On the second Monday of April and on the first Monday of October, eight (8) weeks, at which terms a grand jury shall be empanelled; and on the second Monday of January and the second Monday of July, eight (8) weeks each, at which terms no grand jury shall be drawn or empanelled except by order of the judge.
[3] Section 13-5-39 is subject to specific statutes requiring that grand juries be empanelled at more than two terms in certain counties. See Mississippi Code Annotated section 9-7-15 (1972). Statutes such as 9-7-31 which provide that no grand jury shall be drawn or empanelled at a particular term do not prohibit an existing grand jury from being recalled by the circuit judge in vacation following such term and before the next term at which a grand jury could be empanelled. There is a difference between drawing and empaneling a grand jury and recalling a grand jury.