468 So.2d 68 (1985)
Thomas L. FULLER
v.
STATE of Mississippi.
No. 55520.
Supreme Court of Mississippi.
May 1, 1985.
*69 Travis Buckley, Dan C. Taylor, Ellisville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Pat Flynn, Special Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, HAWKINS and PRATHER, JJ.
PRATHER, Justice, for the Court:
This is an appeal from the Circuit Court of Lincoln County. Thomas L. Fuller was found guilty of murder and sentenced to life in the custody of the Mississippi State Department of Corrections.
Fuller appeals assigning as error:
(1) The invalidity of the indictment;
(2) The trial court erred in overruling appellant's motion for a mistrial based upon the excusal of a juror by the bailiff due to a death in the juror's family;
(3) The trial court erred in overruling appellant's motion for a directed verdict of not guilty and in overruling appellant's motion for a new trial based upon the Weathersby rule; and
(4) The trial court erred in admitting certain evidence.

I.
Appellant Thomas L. Fuller shot and killed his wife, Martha Fuller, on July 28, 1983 at their residence in Bogue Chitto, Mississippi. Mrs. Fuller, 40 years of age, was dead on arrival at approximately 4:40 a.m. at the Southwest Medical Center in McComb. The cause of death was fatal injury to the lung and heart from a gunshot wound to the chest.
Appellant and his wife had been married for two years. Residing with the appellant and his wife were three children of the appellant by a previous marriage: Tommy, age 17; Bobby, age 16; and Debbie, age 11. On April 25, 1983, Mrs. Fuller filed for a divorce from the appellant. In early June, Mrs. Fuller's attorney filed a motion to dismiss the bill for divorce at her request. One week before the shooting, Mrs. Fuller called her attorney and requested that he refile the complaint for divorce.
Appellant testified that on July 28, 1983, he arose at 4:00 a.m. Appellant and his sons were preparing to leave for Picayune, Mississippi, where they were doing construction work. After packing the truck, appellant returned to the house to get a coffee thermos and say goodbye to his wife. According to the appellant, his wife asked him to leave his Remington .22 rifle. Appellant returned to the truck, removed the rifle and returned to his wife's bedroom. Appellant testified that, as he was showing his wife how to insert a cartridge into the magazine of the rifle, the gun accidentally discharged. Appellant testified that he cried out "Oh, God, no" and called his son Bobby.
Bobby Fuller, appellant's sixteen year old son, testified that while waiting in the truck he heard his stepmother cry out "No, no" and then heard a shot. Bobby also testified that his father had threatened to *70 kill his wife approximately a week and a half before her death.
Thomas Earl Stevens, twelve year old nephew of appellant, testified that he was waiting in the truck when he heard the appellant cry out "Oh, no." Debbie Fuller, appellant's eleven year old daughter, testified that she awoke on July 28, 1983 to hear her father crying "Oh, no." Debbie admitted giving an earlier statement to the district attorney's office in which she stated that it was Mrs. Fuller whom she heard cry out "Oh no, oh no". Debbie explained that she changed her story after her father told her it was him who said "Oh, no".
Mike Allen, firearms expert with the Mississippi Crime Lab, testified that between 50 and 100 attempts were made to cause appellant's rifle to accidentally discharge. According to Allen, the only means by which the rifle was successfully discharged was when a loaded cartridge was in the chamber, the safety was in the "off" position and a pressure of four to six pounds was applied in a rearward fashion to the trigger.
Dr. Vijaya Dhannavada, pathologist who performed an autopsy on Mrs. Fuller, testified that she observed a fresh lacerated wound on the right index finger of the victim of a depth that would generally require stitches. Houston Jordan, Pike County Sheriff, also testified that he observed a two to three inch wound on the victim's hand.

II.

Is the indictment invalid?
Appellant contends that the indictment in this case is void because it was returned in August by a grand jury which had been impaneled in January following an intervening term of court. Appellant relies upon Ingram v. State, 330 So.2d 602 (Miss. 1976), in which this Court stated:
[A] grand jury empanelled may not serve after the intervention of a succeeding term of circuit court unless (1) the intervening term is designated for civil business only, or unless (2) the intervening term is one where the judge is specifically given discretion in the matter of empaneling a grand jury, and a new grand jury is not empanelled. The discretion given a circuit judge by Section 13-5-39 to empanel only two grand juries in any given year does not satisfy the requirements of exception (2) in this paragraph.
330 So.2d at 605. Appellant argues that the case at bar does not fall within any of the exceptions recognized in Ingram.
Miss. Code Ann. § 9-7-39 (1972) sets the terms of the circuit court for the Fourteenth District. This statute was amended in March of 1973 to specifically reserve the June term of Circuit Court in Lincoln County for civil business only, as follows:
Lincoln: On the second Monday of January, three (3) weeks, and the second Monday of June, for civil business only, four (4) weeks and the first Monday of September, four (4) weeks.
1973 Miss. Laws, Ch. 360.
In 1983, the statute was revised to eliminate the "civil business only" provision with respect to the June term of Circuit Court in Lincoln County. This legislative revision, however, did not take effect until July 1, 1983. See Miss. Code Ann. § 9-7-39 (Supp. 1984). The grand jury in this case was impaneled in January, 1983. The intervening June term of court was held while the old statute was in effect limiting by law that term to civil business only. Therefore, the indictment in the case sub judice falls within the "civil business only" exception recognized by this Court in Ingram.
This assignment of error is without merit.

III.

Did the trial court err in overruling the motion for a mistrial based upon the out-of-court excusal of one of the jurors?
On the morning of the last day of trial, Pike County Sheriff Houston Jordan learned that one of the juror's grandmother had died during the night. Sheriff Jordan, who assisted in transporting members *71 of the jury to and from the courthouse, informed the juror of her grandmother's death as the jury was preparing to leave the hotel where they were quartered. The juror called her husband who met her at the restaurant where the jury was having breakfast and took her home. Though the record is unclear, the juror was apparently given permission to leave by one of the bailiffs. When the remaining members of the jury arrived at the courthouse, the trial court was informed of the one juror's absence. The trial court then impaneled an alternate juror without objection by the defense.
Appellant raises several questions regarding this unusual occurrence. First, appellant contends that Sheriff Jordan, who testified on behalf of the State in this case, should not have been permitted to serve as a bailiff. This Court has repeatedly stated that a material witness should not serve as the jury bailiff, and if such witness serves as jury bailiff after objection thereto by the defendant, it is reversible error. Pierce v. State, 289 So.2d 901 (Miss. 1974); Dunn v. State, 264 So.2d 823 (Miss. 1972); Smith v. State, 169 So.2d 451 (Miss. 1964); Lee v. State, 226 Miss. 276, 83 So.2d 818 (1955).
In Pierce, supra, this Court stated the above rule disapproving the practice of allowing a material state witness to serve as bailiff to the jury, but refused to reverse on the ground that (a) no timely objection was made at trial, and (b) defendant and attorneys did not testify under oath or make affidavit upon motion for new trial that they were ignorant of the fact complained of during the trial. 289 So.2d at 903. In the case sub judice, as in Pierce defense counsel failed to object to Sheriff Jordan's role in transporting the jury to and from the courthouse. Likewise, defense counsel, upon motion for a new trial, did not contend under oath that it was ignorant of Sheriff Jordan's role during the trial. Accordingly, the participation of Sheriff Jordan as bailiff was not reversible error.
Secondly, appellant argues that the out-of-court excusal of the juror requires reversal. The record indicates that Sheriff Jordan informed the juror of her grandmother's death and one of the other bailiffs gave the juror permission to go home shortly thereafter.
At the outset, it should be noted that this Court strongly disapproves of this highly irregular procedure. Miss. Code Ann. § 13-5-67 (1972), which governs impaneling of alternate jurors, does not contemplate excusal of a juror by one other than the trial judge. The proper procedure in this case would have been for the bailiff to escort the juror back to court and inform the trial judge of the situation. The trial judge could then have determined if, under the circumstances, the juror was unable to perform her duty and, if warranted, ordered excusal.
However, in this case, we decline to reverse on this ground for two reasons. First, appellant raised no objection when the trial court announced the impaneling of the alternate juror. Secondly, appellant has failed to show any prejudice as a result of the impaneling of the alternate. Russell v. State, 220 So.2d 334 (Miss. 1969). Finally, we observe that the alternate in this case was subjected to the same examination as the original juror and accepted by both sides.
This Court concludes that, under the circumstances of this case, this assignment of error is without merit.

IV.

Did the trial court err in overruling defense motion for directed verdict and motion for a new trial based on the Weathersby rule?
Appellant argues that it was error for the trial court to refuse defense's request for a directed verdict and overrule the defense motion for a new trial in light of the established rule that "where the defendant or the defendant's witnesses are the only witnesses to the homicide, their version, if reasonable, must be accepted as *72 true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933).
In the case sub judice, appellant's version of an accidental shooting was contradicted both by witnesses for the state and by physical evidence. Bobby Fuller, defendant's sixteen year old son, testified that immediately prior to hearing a shot fired, he heard the victim cry out, "No, no." Sheriff Houston Jordan and pathologist Dr. Vijaya Dhannavada testified that a fresh laceration was observed on the knuckle of the victim. Moreover, the firearms expert testified that repeated testing of appellant's rifle indicated that the gun was not capable of malfunctioning in any manner claimed by the appellant. Finally, the results of the autopsy, which indicated that the projectile traveled in a straight line through the deceased, contradicted the appellant's statement that the barrel of his rifle was pointed in a downward position when the accident occurred.
The Weathersby rule has no application to the facts of this case and the trial court's ruling on the motions was proper.

V.

Did the trial court err in admitting evidence over the objection of the appellant?
Appellant challenges the trial court's admission of evidence regarding threats by the appellant toward the victim and testimony regarding marital discord between the appellant and the victim.
Bobby Fuller, sixteen year old son of defendant, testified that his father had threatened to kill his wife "if you take my baby down to Jessie Gill's". This threat against the victim is admissible as tending to prove motive, malice, premeditation and criminal intent. See Steed v. State, 396 So.2d 625 (Miss. 1981); Whittington v. State, 377 So.2d 927 (Miss. 1979). The testimony of Vicki Bales, the victim's natural daughter, was that her mother was secretly planning to leave the appellant. While evidence of marital discord that is remote in time relative to the crime is not generally admissible, May v. State, 199 So.2d 635 (Miss. 1967), the testimony in the case sub judice concerned events occurring only days before Mrs. Fuller was shot.
Finding no reversible error in this record, the conviction and judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.