751 So.2d 1194 (1999)
Arthur Willis YORK, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01088-COA.
Court of Appeals of Mississippi.
November 9, 1999.
*1195 Constance Iona Slaughter, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
DIAZ, J., for the Court:
¶ 1. The Scott County Circuit Court convicted Arthur Willis York of one count of the sale of less than one ounce of marijuana and one count of the sale of cocaine. On appeal, York argues (1) the trial court erred in denying his motion for a directed verdict, (2) the verdict was against the overwhelming weight of the evidence, (3) the State's failure to name the confidential *1196 informant in the indictment violated his double jeopardy rights because the State could, at a later date, prosecute him for selling drugs to the confidential informant who acted as the middleman in the drug transactions, and (4) the trial court erred in granting the State's requested jury instruction concerning constructive transfer. We find no error in the trial court's resolution of these issues and affirm.

FACTS
¶ 2. On December 2, 1997, agents from the Mississippi Bureau of Narcotics conducted undercover drug "sting" operations in Scott County. Undercover agent Josh Coleman and two confidential informants left the pre-buy meeting site in search of Arthur Willis York, a suspected drug dealer. Coleman and the informants drove to the Springlane Apartments where one of the informants resided. There they found York, who was driving a red or maroon Pontiac Grand Am. One of the informants, an acquaintance of York's, approached the vehicle and told York that the agent wished to purchase an ounce of marijuana. York indicated he would not deal directly with the agent and would only deal with the informant. After York quoted a price of eighty dollars, Agent Coleman handed the money to the informant who in turn passed it to York. The drugs were then passed from York to the informant to Coleman. The informants and Coleman then departed the Springlane Apartments and returned to the pre-buy meeting site where the drugs were turned over to the agent in charge of the investigation.
¶ 3. The process was repeated three days later on December 5, when Coleman and the confidential informants located York in a parking lot near Fred's Dollar Store and approached him, seeking to purchase additional drugs. Again, York refused to deal directly with the undercover agent, stating "[w]here I'm from, we don'twe don't do business to [sic] anybody we don't know, because we will go to jail." Because there were several law enforcement officers nearby, York expressed a desire to conduct the drug transaction at the apartment of one of the informants. York later arrived at the apartment and sold the cocaine to the agent for $250. As with the previous drug buy, a confidential informant served as the intermediary, passing the cash from the agent to York, and the drugs from York to the agent.
¶ 4. York was indicted for the sale of less than one ounce of marijuana and the sale of cocaine. Following a trial held June 8 and 9, 1998, the Scott County Circuit Court convicted York on both counts. York was sentenced to a term of three years in the custody of the Mississippi Department of Corrections and ordered to pay a $2,000 fine on Count I. He received a sentence of fifteen years and was ordered to pay a $5,000 fine on Count II, with the sentence to run consecutively to Count I.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN DENYING YORK'S MOTION FOR A DIRECTED VERDICT
¶ 5. York claims that the State failed to prove that he sold either marijuana or cocaine to Agent Coleman because there was no "hand to hand" exchange. He contends that, at most, the evidence established his guilt of selling drugs to the confidential informant, crimes for which he was not indicted. According to York, no drug purchases occurred within the meaning of the statute because he did not "deliver" the drugs to Agent Coleman but rather to the confidential informant.
¶ 6. When judging the sufficiency of the evidence on a motion for a directed verdict, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. If, under this standard, sufficient evidence to support a jury verdict of guilty exists, the motion for a directed verdict should be overruled. Mamon *1197 v. State, 724 So.2d 878, 881 (Miss. 1998).
¶ 7. York was convicted of the sale of less than one ounce of marijuana, in violation of Miss.Code Ann. § 41-29-139(b)(3) (Supp.1998) and the sale of cocaine, in violation of Miss.Code Ann. § 41-29-139(a)(1) (Supp.1998). The Uniform Controlled Substances Law defines a sale as "the actual, constructive or attempted transfer or delivery of a controlled substance for remuneration, whether in money or other consideration." Miss.Code Ann. § 41-29-105(aa)(Supp.1998). York contends that because he did not transfer or deliver the drugs to the undercover agent personally, a sale did not occur. Though York did not transfer the drugs directly to the undercover agent, a sale did occur. We find that York constructively delivered both the marijuana and the cocaine to the undercover agent. There exists no Mississippi case law defining "constructive transfer"; however, other jurisdictions have defined it and concluded on similar facts that a constructive transfer took place.
¶ 8. In one case, the undercover agent tendered the cash to the defendant, who accepted it. Roberts v. State, 866 S.W.2d 773, 778 (Tex.Ct.App.1993). The defendant then handed the cocaine to the informant who in turn handed it to the agent. The defendant claimed that because the informant actually transferred the cocaine, there was insufficient evidence that he sold it to the agent as alleged in the indictment. Id.
¶ 9. The court rejected the defendant's contentions and found that a constructive delivery had occurred. It defined constructive delivery as "the transfer of a controlled substance, either belonging to an accused or under his control, by some other person or agency, at the instance and direction of the accused." Id. The court further explained that "[a] constructive transfer is proved by showing that before the alleged delivery, the transferor had either direct or indirect control of the substance transferred, and the transferor knew of the existence of the transferee." Id. Because the defendant had direct control over the cocaine and was aware of the undercover agent's existence, the court found that he constructively transferred the drugs.
¶ 10. Courts in other jurisdictions which have enacted the Uniform Controlled Substances Act have reached similar results. State v. Campbell, 59 Wash.App. 61, 795 P.2d 750, 752 (1990) (constructive delivery where the dealer placed the cocaine on a car seat and at his direction a third person picked it up and handed it to the undercover agent); Laird v. State, 483 N.E.2d 68, 70 (Ind.1985) (constructive delivery where defendant's girlfriend delivered drugs to third party's home at the defendant's instruction); State v. Jochims, 241 N.W.2d 25, 28 (Iowa 1976) (constructive delivery where defendant's employee delivered amphetamines to the undercover agent, accepted cash from him, and immediately gave the money to the defendant); State v. Howell, 196 Neb. 832, 246 N.W.2d 479, 480 (1976) (constructive delivery where the agent gave the money to the defendant and a short time later an accomplice delivered the marijuana to the agent).
¶ 11. Constructive delivery occurred in the instant case. In both instances, the confidential informant transferred the drugs at the behest of York. The drugs were under York's direct control and York was cognizant of Agent Coleman's existence. In fact, York's awareness of Agent Coleman's existence and his suspicion of him were the very reasons the drugs were passed through the informant. Agent Coleman testified that York refused to deal with him directly because he did not know him. He further testified that during both transactions, York observed him hand the money to the informant who then passed it to York. Agent Coleman stated that York observed him take the drugs from the informant after he had paid for them.
¶ 12. Though not couched in terms of "constructive delivery," the Mississippi Supreme *1198 Court has affirmed a conviction for the sale of a controlled substance occurring under similar circumstances. Ingram v. State, 330 So.2d 602, 605-06 (Miss.1976). The defendant met with an informant and an undercover agent for the purpose of selling heroin to the undercover agent. He quoted a price of $375, or $125 per gram. The defendant handed the heroin to the informant who in turn handed it to the undercover agent. Id. at 606. The agent then tendered the cash to the defendant who refused to accept it, insisting instead that the cash be given to the confidential informant. The defendant was convicted of the sale of heroin. Id.
¶ 13. On appeal, the defendant argued that because the money was never placed directly in his hands, a sale was not completed. Id. The court rejected the defendant's argument, finding that
[t]he facts created a jury question and we hold that the jury was justified in finding that a sale was made by defendant to [the undercover agent] even though the money never actually reached the hands of defendant. The evidence that defendant quoted a price for the heroin, following which the money was counted out, tendered to him, and then handed to [the confidential informant] at the direction of defendant is sufficient to support the jury's verdict.
Id. at 606.
¶ 14. In the instant case, York quoted a price of eighty dollars for the marijuana and $250 for the cocaine. He observed Agent Coleman give the money to the informant who then passed it to him. Agent Coleman testified that he was within five feet of York for the duration of both transactions. In describing the cocaine purchase, Agent Coleman stated "I watched the transaction, the crack cocaine coming from the violator to the CI, and from the CI, the $250 that I gave him, to the violator, and the CI brought the crack cocaine back to me." As for the marijuana purchase, Agent Coleman noted that the extent of the confidential informant's involvement was handing the money to York and the marijuana to Agent Coleman. According to Agent Jimmie Nichols, such transactions are common because the dealers "feel like if they pass the drugs to somebody else, then they have taken themselves out of the transaction, for whatever reason."
¶ 15. York relies upon one precedent in which the defendant's conviction was reversed because the State failed to prove that he had knowledge of the sale and delivery of marijuana. McVeay v. State, 355 So.2d 1389, 1391 (Miss.1978). An undercover agent met an individual in a bar and asked whether he "had any dope." The individual returned accompanied by the defendant. Id. at 1390. The individual then handed a bag of marijuana to the agent. After receiving fifteen dollars from the agent, the individual gave the money to the defendant, remarking "[h]ere is your money." Id.
¶ 16. The Mississippi Supreme Court found that there was no proof as to whether or not the defendant knew that marijuana had been delivered to the agent. "The delivery occurred at 2:30 a.m., alongside [the agent's] car, which was parked in front of the lounge. His testimony does not set forth the lighting conditions at that place, or whether or not [the defendant] could observe the object being delivered to [the agent]." Id.
¶ 17. The testimony in the instant case does not suffer from the same deficiencies. Agent Coleman testified that the transactions occurred in York's presence and that York observed the exchange between the informant and Agent Coleman. In fact, it occurred at his direction. The evidence was legally sufficient to establish that York sold marijuana and cocaine to the undercover agent.

II. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 18. In deciding whether the weight of the evidence can sustain the *1199 verdict, we accept as true the evidence supporting the verdict, including all reasonable inferences arising from that evidence. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court order a new trial. Collier v. State, 711 So.2d 458, 461(Miss.1998).
¶ 19. York contends that because the jury convicted him without the "title, name, identity and possible testimony of the confidential informants" the verdict was against the overwhelming weight of the evidence. However, Agent Jimmie Nichols testified that the informants' names were Nathanial Arnold and Derrick Arnold. Although neither informant testified, "[a] conviction for the sale of controlled substances may rest on the uncorroborated testimony of an undercover agent." Doby v. State, 532 So.2d 584, 590 (Miss.1988). The testimony of Agent Coleman was sufficient to support the jury's verdict.
¶ 20. York suggests that the identities of the confidential informants were not disclosed to him prior to trial. We note that York did not allege a discovery violation at trial. During cross-examination of Agent Coleman, defense counsel asked whether he knew the informants' names. Agent Coleman was unable to respond because the informants' names had been redacted from his report. Defense counsel then sought a recess "so we can get the names of the CI's." Following the recess, Agent Coleman testified with some uncertainty that the informants were Nathan and Robert Jones. Agent Nichols later corrected Agent Coleman's testimony, stating that the informants were Nathan and Derrick Arnold.
¶ 21. On his motion for a directed verdict, York complained that the proof did not show that he sold drugs to the undercover agent. His attorney argued that "Willis York is accused of selling marijuana and cocaine to somebody. We still don't know who. He doesn't know who, and, you know, we submit that we are greatly prejudiced by that." The State responded that "[w]e disclosed the names of the informants prior to trial." The trial court overruled York's motion.
¶ 22. York was entitled to have the names of the confidential informants revealed to him. If the informant is an eyewitness to the crime or participated in the criminal activity, his name ordinarily must be disclosed to the defendant. Dowbak v. State, 666 So.2d 1377, 1384 (Miss. 1996). The confidential informants were both eyewitnesses and participants in the crimes in the present case. The State maintains that it did reveal the names of the informants to York. However, even if the State failed to do so, York has waived this issue.
¶ 23. An accused's remedy for tardy disclosure of that to which he is entitled in pre-trial discovery is a continuance under the circumstances. The accused's right to a continuance is not self-executing, and he must affirmatively request a continuance or waive the issue. Id. at 1385. In the present case, York failed to request a continuance. Likewise, he did not request a mistrial when he learned of the identities of the State's confidential informants. Accordingly, we find that even if a discovery violation did occur, York has waived his right to relief.

III. WHETHER YORK'S DOUBLE JEOPARDY RIGHTS WERE VIOLATED
¶ 24. York was convicted of selling marijuana and cocaine to undercover agent Josh Coleman. He claims that the State's failure to name the confidential informant in the indictment violates his double jeopardy rights because the State could, at a later date, prosecute him for selling drugs to the confidential informant who acted as the middleman in the transactions.
¶ 25. This claim is not ripe for review. Until the prosecution seeks to try York for *1200 selling drugs to the confidential informant, the risk of double jeopardy is speculative. Double jeopardy protection applies to successive prosecutions for the same criminal offense. White v. State, 702 So.2d 107, 109 (Miss.1997) (quoting United States v. Dixon, 509 U.S. 688, 694, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). York does not claim that he has been twice put in jeopardy for the same offense. Rather, he contends that he may be prosecuted in the future for selling drugs to the confidential informant.
¶ 26. Should the State attempt to prosecute York for selling marijuana and cocaine to the confidential informant, the charges would not survive a challenge on double jeopardy grounds. The test for determining whether a defendant has been subjected to double jeopardy is the "same elements" test as set out in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The same-elements test inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution. White, 702 So.2d at 109 (quoting United States v. Dixon, 509 U.S. at 694, 113 S.Ct. 2849). York's drug sales to Agent Coleman and the confidential informant are the same offenses, and thus, York could not be prosecuted for selling drugs to both the informant and Agent Coleman.

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING A JURY INSTRUCTION CONCERNING CONSTRUCTIVE TRANSFER
¶ 27. Finally, York contends that the trial court erred in granting State instruction S-4, which provides that:
The Court instructs the Jury that a person who sells illegal controlled substances to an undercover law enforcement officer does not insulate himself from criminal liability by passing the said controlled substance through a third party to the law enforcement officer.
If you should find from the evidence in this case beyond a reasonable doubt that the defendant, Arthur Willis York, sold illegal controlled substances to Joshua Coleman at a time when the said Joshua Coleman was working as an undercover law enforcement officer, then you should find the Defendant guilty as charged, even though the said controlled substances, if any, may have been passed from the defendant to Joshua Coleman through a third party.
¶ 28. York did not object to the instruction at trial. Accordingly, he is procedurally barred from raising this issue for the first time on appeal. York's attorney was asked specifically if she had an objection to Instruction S-4. She replied, "No objection." Where a defendant fails to contemporaneously object to an instruction at trial, he is procedurally barred from raising this issue on appeal. Gray v. State, 728 So.2d 36, 74 (Miss.1998).
¶ 29. Alternatively, this claim is without merit. The instruction is a correct statement of the law of constructive transfer, as discussed above.
¶ 30. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I SALE OF LESS THAN ONE OUNCE OF MARIJUANA AND COUNT II SALE OF COCAINE AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND $2,000 FINE ON COUNT I AND FIFTEEN YEARS AND $5,000 FINE ON COUNT II TO RUN CONSECUTIVELY WITH COUNT I IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.