870 So.2d 1241 (2004)
Joseph PRATT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01584-COA.
Court of Appeals of Mississippi.
April 6, 2004.
*1243 Jason Lee Shelton, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorneys for appellee.
Before KING, P.J., THOMAS and MYERS, JJ.
MYERS, J., for the Court.
¶ 1. Joseph Pratt was convicted by a jury for the sale of cocaine, a Schedule II controlled substance, in violation of Mississippi Code Annotated Sections 41-29-139(a)(1) and 41-29-142(1) (Rev.2001). The Circuit Court of Chickasaw County sentenced him to serve fifteen years, with five years suspended in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Pratt raises the following four issues on appeal.

ISSUES PRESENTED
I. Did the trial court err by refusing to allow the jury venire to be drawn from both the First and Second Judicial Districts of Chickasaw County?
II. Did the trial court err by denying Pratt's motion for directed verdict at the close of the case?
III. Was the jury verdict against the overwhelming weight of the evidence?
IV. Did the trial court err by granting the State's proposed jury instructions in violation of Rule 3.07 of the Uniform Circuit and County Court Rules?

STATEMENT OF FACTS
¶ 2. On November 23, 1999, Joseph Pratt, Titus Atkinson a/k/a "Sugarman" and Sheldon Johnson were gathered at a car wash in Houston, Mississippi, when a woman in a car drove into the car wash parking lot. Pratt, Atkinson and Sheldon *1244 were not aware that the woman, Paula Oatsvall, was an confidential informant for the Houston Police Department. All three men approached Oatsvall's car. She wore a body wire and had two video cameras concealed in her vehicle. The appellant, Pratt, approached Oatsvall after Atkinson and Johnson and said to Oatsvall, "Let me get that twenty." Oatsvall asked Pratt, "Do you have a twenty sack?" Pratt replied, "Follow me to my house." When Oatsvall arrived at Pratt's house, Atkinson was already there waiting in the yard. Atkinson went over to Pratt's car, got something from Pratt and walked over to Oatsvall's car. Atkinson got into the car with Oatsvall and handed her twenty dollars worth of cocaine. Atkinson said to Oatsvall, "Let's cut a block." As they were driving away, Oatsvall gave Atkinson twenty dollars. Oatsvall dropped Atkinson by a convenience store and then took him back to Pratt's house. After the sale took place, Oatsvall went back to the disclosed location, met Brian Ely, a narcotics investigator, and gave him the drugs.

LEGAL ANALYSIS
I. DID THE TRIAL COURT ERR BY REFUSING TO ALLOW THE JURY VENIRE TO BE DRAWN FROM BOTH THE FIRST AND SECOND JUDICIAL DISTRICTS OF CHICKASAW COUNTY?
¶ 3. Pratt asserts as his first issue that the trial court erred by overruling his motion to quash the jury venire and thereby refusing to allow the jury venire to be drawn from both the First and Second Judicial Districts of Chickasaw County. Pratt argues that because the jury venire was taken from the First Judicial District only, he was denied a fair cross-section of potential jurors from Chickasaw County as guaranteed by the Sixth Amendment.
¶ 4. The crime, sale of a controlled substance, occurred in Houston, Mississippi, which is in the First Judicial District of Chickasaw County. The applicable statute for selecting a jury when a county contains two circuit court districts states:
In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) jury boxes if the court so direct, one (1) name for each alternately.
Miss.Code Annotated § 13-5-21 (Rev. 2002). Pratt claims that drawing the jury venire from one district violated Mississippi Code Annotated Section 13-5-2, which provides:
It is the policy of this State that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this State and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this State on account of race, color, religion, sex, national origin, or economic status.
¶ 5. Pratt makes an identical argument to the one made in Thomas v. State, 818 So.2d 335 (Miss.2002), although he wants the opposite result. In that case, the court held that the trial court did not err by drawing the jury venire from both judicial districts of Chickasaw County. Thomas, 818 So.2d at 342 (¶ 14).
*1245 ¶ 6. Section 13-5-21 meets the constitutional requirements of the Sixth Amendment. Myers v. State, 353 So.2d 1364, 1368 (Miss.1978). Juror selection as provided by statute is not mandatory, but directory. De La Beckwith v. State, 707 So.2d 547, 597 (Miss.1997). In counties that have two judicial districts, the trial judge has discretion to draw a special venire from both districts, but is not required to do so. Myers, 353 So.2d at 1368 (citing Taylor v. State, 148 Miss. 621, 114 So. 390 (1927)). Unless the defendant shows that the method used was fraudulent or a radical departure from the method prescribed by statute as to be unfair or the prevent due process of law, the appellate court will not reverse. De La Beckwith, 707 So.2d at 597. Absent an abuse of discretion, the appellate court will not reverse the trial judge's decision to draw the jury venire from one district only. Davis v. State, 660 So.2d 1228, 1261 (Miss.1995). In Davis, the court held that the trial court did not abuse its discretion by refusing the defendant's request to draw the jury venire from both judicial districts without a showing that the defendant was tried by a partial and biased jury. Davis, 660 So.2d at 1261.
¶ 7. Similarly to Thomas, Pratt asserts that the jury venire was not representative of a cross-section of the community in which he lived because the jury was pooled from the First Judicial District only. Pratt contends that his arguments go well beyond those proposed in Thomas.
¶ 8. As in Thomas, Pratt directs our attention to the Supreme Court cases of Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In Taylor, the Supreme Court held that the "Sixth Amendment right to a trial by impartial jury of the State and District wherein the crime shall have committed, requires that the jury be drawn from a fair cross section of the community." Thomas, 818 So.2d at 341(¶ 9) (citing Taylor, 419 U.S. at 531, 95 S.Ct. 692). In Duren, a three-prong test was designed for establishing a prima facie violation of the fair-cross section requirement. To satisfy this test, the defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this under representation is due to systematic exclusion of the group in the jury selection process. Duren, 439 U.S. at 364, 99 S.Ct. 664.
¶ 9. Regarding the first prong of Duren, the exclusion of racial groups from jury service has been said to be "at war with our basic concepts of a democratic society and a representative government." Taylor, 419 U.S. at 527, 95 S.Ct. 692(citing Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L.Ed. 84 (1940)). In Thomas, the court stated that it was not provided any statistical data regarding the racial composition of Chickasaw County but that "elaborate and comprehensive data as to this one element is unnecessary." Thomas, 818 So.2d at 341 (¶ 10). Pratt alleges that he provided documentation from the 1990 census report that showed the First Judicial District as being an area of primarily white residents and the Second Judicial District as being an area of primarily black residents. Unfortunately, the census reports were not contained in the record for our review on appeal.
¶ 10. Regarding the second prong of Duren, "the defendant must demonstrate the percentage of the community made up of the group alleged to be under represented." Thomas, 818 So.2d at 341 (¶ 11) (citing Duren, 439 U.S. at 364, 99 *1246 S.Ct. 664) In Thomas, the court held that the defendant did not meet this prong because he made unsubstantiated assertions that the Houston District is primarily white and the Okolona District is primarily African American. Id. Pratt argues that he provided 1990 census figures that indicated a total population for the City of Houston at 3903. Of this total, 2,555 residents were white and 1,298 residents were black. The total population for the City of Okolona was 3,267 with 1,621 white residents and 1,640 black residents. Once again, these are assertions made in Pratt's brief and cited to the trial judge in the record, but the reports themselves were not provided in any form to this Court on appeal.
¶ 11. Regarding the last prong of Duren, Pratt was required to show that the under representation of African Americans in general and on his venire was due to a systematic exclusion. Thomas, 818 So.2d at 341-42 (¶ 12). In his appellate brief, Pratt attributes the systematic exclusion of African Americans on juries in the First Judicial District of Chickasaw County to the practice of "importing white jurors to try cases on the black side of the county, but denying blacks the opportunity to sit on juries on the white side of the county." The Supreme Court has defined systematic exclusion as "inherent in the particular jury-selection process utilized." Duren, 439 U.S. at 366, 99 S.Ct. 664. In Duren, the defendant was able to demonstrate that such abuses occurred in every weekly venire for a period of one year. Id. Pratt alleges that this practice of systematic exclusion occurs in Chickasaw County but offers no data to support his conclusions. This does not satisfy the requirements set forth in Duren.
¶ 12. In Taylor, the court stated, "in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." Thomas, 818 So.2d at 342 (¶ 13)(quoting Taylor, 419 U.S. at 537, 95 S.Ct. 692). This assignment of error is without merit.
II. DID THE TRIAL COURT ERR BY DENYING PRATT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE CASE?
¶ 13. Pratt argues that the trial court erred by denying his motion for directed verdict based upon the insufficiency of the evidence. The standard of review for denial of a judgment notwithstanding the verdict (JNOV) and directed verdict are the same. Grihim v. State, 760 So.2d 865, 866(¶ 6) (Miss.Ct.App.2000) (citing Am. Fire Prot., Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995)). An appellant challenges the sufficiency of the evidence when he appeals from an overruled motion for JNOV or directed verdict. Noe v. State, 616 So.2d 298, 302 (Miss.1993).
¶ 14. Our state's supreme court offered guidance on this issue in McClain v. State, 625 So.2d 774 (Miss. 1993). In McClain, the court stated that in appeals from a denied JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. Id. at 778 (citing Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)). The credible evidence consistent with [the defendant's] guilt must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss.1974). The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). Matters regarding the weight and credibility of the evidence are to be resolved by the jury. Neal v. State, *1247 451 So.2d 743, 758 (Miss.1984). "We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Wetz, 503 So.2d at 808; McClain, 625 So.2d at 778.
¶ 15. The jury heard the testimony of Paula Oatsvall, the confidential informant, who was working with Officer Brian Ely to arrange drug buys in Chickasaw County. Oatsvall testified that she was wearing a wire provided by agents and two cameras were located in her vehicle. Oatsvall stated that when she arrived at Shiner's car wash, she was approached by Sheldon Johnson and Titus Atkinson a/k/a "Sugarman." Oatsvall asked Atkinson for a dime sack. Atkinson returned to Oatsvall's vehicle with the marijuana. Oatsvall further stated that Pratt came over to her vehicle and said, "Let me get that twenty." Oatsvall asked Pratt if he had a twenty sack and Pratt replied, "Follow me to my house." Pratt claims that he wanted Oatsvall to come over to his house so they could have intercourse. Oatsvall testified that she went to Pratt's house to get the cocaine. Oatsvall explained that Atkinson was in Pratt's car when Pratt handed Atkinson the cocaine. Atkinson came over to Oatsvall's vehicle and handed the cocaine to her. In exchange, she gave Atkinson the money.
¶ 16. The videotape from Oatvall's car shows Titus Atkinson, and Pratt's voice is heard several times. Pratt admitted on cross-examination that his voice was on the tape. However, Pratt claims that since he was not seen on the videotape actually selling the cocaine to Oatsvall that the trial court should have granted his motion for directed verdict. Pratt claims that he had nothing to do with the drug transactions. Pratt also claims that Oatsvall's credibility was questioned by her testimony on crossexamination. Oatsvall strongly denied having a current romantic relationship with Pratt or anyone on the tape. She denied that she was paid to get convictions. She stated that she was paid somewhere between $20 and $50 for assisting in setting up drug sales.
¶ 17. The jury also heard the testimony of Officer Brian Ely which corroborated Oatsvall's testimony regarding the drug sale. Ely was monitoring the cocaine sale by listening over the audio monitor. He corroborated Oatsvall's testimony about requesting a dime sack from Atkinson before the cocaine sale. Ely further testified that Oatsvall told him on the transmitter that she just bought a $20 rock from Joseph Pratt, but "Sugarman" gave it to her. Edwina Ard with the State Crime Lab testified that based on several scientific tests on the substance recovered by Oatsvall, the substance was crack cocaine.
¶ 18. Pratt admitted that he was present at the car wash, that it was his voice heard on the tape and that he was present at his house when the drugs were purchased. Pratt denied that he sold the cocaine to Oatsvall. This testimony created a conflict in the evidence that was for the jury to resolve. It was for the jury to decide the credibility of each witness. Neal, 451 So.2d at 758. Viewing the evidence in the light most favorable to the State and accepting all evidence as true, the trial judge properly denied Pratt's motion for directed verdict.
III. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 19. Pratt argues that the State failed to meet its burden of proof based on weaknesses and inconsistencies in the State's case. The State argues that it did, in fact, meet its burden of proof as demonstrated by excerpts from the record.
*1248 ¶ 20. The standard of review for determining whether a jury verdict is against the overwhelming weight of the evidence is well-settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Williams v. State, 757 So.2d 1064, 1065(¶ 6) (Miss.Ct.App.2000) (citing Dudley v. State, 719 So.2d 180, 182 (Miss. 1998)). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Dudley, 719 So.2d at 182. "This Court does not have the task of reweighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." Langston v. State, 791 So.2d 273, 280 (¶ 14) (Miss.Ct.App.2001).
¶ 21. The State presented evidence that showed Joseph Pratt was present at Shiner's car wash, that Pratt approached Oatsvall's car and made several statements, including "Let me get that twenty" and "Follow me to my house." The State also presented evidence that Oatsvall went to Pratt's house to pick up the cocaine. Testimony was given that supported the State's claim that Pratt gave the cocaine to Atkinson who in turn gave the cocaine to Oatsvall in return for money. Once again Pratt argues that because he did not actually give the cocaine to Oatsvall he could not be guilty of selling cocaine.
¶ 22. The State relies on the theory of "constructive sale" or "constructive transfer" as set forth by this Court in York v. State, 751 So.2d 1194 (Miss.Ct.App. 1999). A "constructive transfer" occurs when the transfer was controlled and directed by the defendant and when the "transferor had either direct or indirect control of the substance transferred, and the transferor knew of the existence of the transferee." York, 751 So.2d at 1197 (¶ 9). Oatsvall testified that after she asked Pratt for a $20 sack she drove to Pratt's house. She stated that Atkinson got something from Pratt, who was sitting in his car, and walked over to her vehicle. Atkinson handed her the cocaine and she gave him $20 in exchange for the drugs. Oatsvall testified that the drugs came from Pratt and that Atkinson was merely an intermediary. The appellant's conviction may be sustained when it is based on the uncorroborated testimony of a single witness whose testimony is not unreasonable and has not been successfully impeached. Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982). The facts of this case reach beyond that statement of law because Oatsvall's testimony was corroborated by Officer Brian Ely.
¶ 23. Judging these facts in a light most favorable to the State, a reasonable juror could infer that Pratt was guilty of sale of a controlled substance, specifically cocaine, beyond a reasonable doubt. The weight of the evidence against Pratt demonstrates that sufficient proof was offered by the State for the jury to find Pratt guilty of sale of a controlled substance pursuant to Mississippi Code Annotated Sections 41-29-139(a)(1) and 41-29-142(1) (Rev.2001).
IV. DID THE TRIAL COURT ERR BY GRANTING THE STATE'S PROPOSED JURY INSTRUCTIONS IN VIOLATION OF RULE 3.07 OF THE UNIFORM CIRCUIT AND COUNTY COURT RULES?
¶ 24. Pratt asserts that the trial judge erred by granting the State's proposed *1249 jury instructions in violation of Rule 3.07 of the Uniform Circuit and County Court Rules. Pratt argues that the State was allowed to give numerous instructions which he was not given until after his trial was underway. The following occurred during objections to jury instructions:
Mr. Shelton (defense attorney): I have an objection to all of the State's instructions for not being timely disclosed. I just, when we started questioning on the jury instructions was the first time I had received all of them with the exception of one which I received, well, which the prosecution laid on my area here while I was questioning a witness, yesterday. I don't think I was given proper notice; but other than that, your Honor, I think S-1 is a proper statement of the law.
By the Court: It will be given.
¶ 25. Rule 3.07 of the Uniform Circuit and County Court Rules states: "At least twenty-four hours prior to trial each of the attorneys must number and file the attorney's jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have not been pre-filed." In Clair v. State, 845 So.2d 733, 736 (Miss.Ct. App.2003), this Court stated that without a showing of prejudice to the defendant, failure to pre-file instructions was harmless error.
¶ 26. Pratt argues that the prejudice to him occurred because by giving the aiding and abetting instruction the State was able to change the nature of the charges against him. Pratt claims that because he was indicted for the sale of a controlled substance and not as an accessory, the instruction was improper. Jury Instruction S-3 reads:
The court instructs the jury that each person present at the time of, consenting to and encouraging, aiding or assisting in any manner in the commission of a crime, or knowingly and willfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense.
¶ 27. The following occurred during objections to jury instructions:
Mr. Shelton: Yes, your Honor, I have an objection to that. I don't think it is a proper statement of the law; and furthermore, Joseph Pratt has not been charged with that. Your Honor, Joseph Pratt was charged with the sale of cocaine. He was not charged with aiding and abetting, accessory, conspiracy, encouraging, anything like that; and I think that it would error to allow the state to come in now at the end at the close of the case and to change their theory of the case. Their theory, what they have to prove, your Honor, is in the indictment; and there's nothing like this in the indictment; and I think it's inappropriate.
Mr. Stallings (Assistant District Attorney): Your Honor, Section 97-1-3 of the Mississippi Code says that a person who is accessory before the fact can be charged or indicted the same as if he was a principal. That's what happened.
By the Court: That's the law, Mr. Shelton.
Mr. Shelton: Your Honor, I think they have to be charged as an accessory with something, don't they?
By the Court: No, sir. That's what the statute says; that if they are an accessory before the fact, then they can be charged and tried and sentenced as a principal. That's my understanding of it and has been for a number of years.
¶ 28. In Hollins v. State, 799 So.2d 118, 123 (Miss.Ct.App.2001), this Court held *1250 that an aiding and abetting instruction was proper where the evidence showed the defendant, Hollins, was present and assisted others in the commission of the drug sale. Hollins was indicted for the sale of cocaine as a principal, not as a accomplice. However, the evidence showed a constructive sale. Hollins, 799 So.2d at 122 (¶ 8). The Court stated:
In this case Hollins was present at the time the crime was committed, he gave the drugs to Jackson to sell to the agent and he shared in the profits from the sale. He obviously aided and abetted the crime committed. The instruction clearly informs the jury that if it finds that Hollins aided and abetted Jackson in the commission of the crime, he can be held guilty as a principal and punished as such. Although aiding and abetting was not officially part of Hollins's indictment, the evidence presented clearly supports the instruction.
Hollins, 799 So.2d at 123 (¶ 14). Pratt admitted to being present at the car wash. Pratt admitted that his voice was on the tape saying "Let me get that twenty" and "Follow me to my house." Paula Oatsvall testified that Pratt gave the drugs to Atkinson and Atkinson then sold the drugs to her. As in Hollins, there was evidence that Pratt aided and abetted in the sale of cocaine to Oatsvall. Even though his indictment charged him as a principal, the evidence presented supports the instruction given. This issue is without merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY OF CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED ON POST RELEASE SUPERVISION, PAY RESTITUTION OF $90 TO HOUSTON POLICE DEPARTMENT AND $100 TO VICTIM'S COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.